SANDRA L. KILDUFF ET AL. *v.* ADAMS, INC., ET AL.
(14182)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued February 21—decision released June 18, 1991

*Edward T. Lynch, Jr.,* with whom, on the brief, was *Suzann L. Beckett,* for the appellants (defendants).

*Timothy Sheehan,* for the appellees (plaintiffs).

CALLAHAN, J. The plaintiffs, Sandra L. Kilduff and her husband, David J. Kilduff, Sr.,[1] brought this action against the defendants seeking damages for fraud and unjust enrichment. The defendants are Adams, Inc., a Connecticut corporation, and Bernard F. Adams and his wife, Violet Adams, both of whom are officers of Adams, Inc. The action arose out of fraudulent misrepresentations allegedly made by the Adamses that enabled the corporate defendant to take title to the plaintiffs' house pursuant to foreclosure proceedings, thereby forcing the Kilduffs and their three children from their home. The trial court, *Maloney, J.,* granted the defendants' motion to strike the unjust enrichment count but denied the motion as to the fraud count. The jury answered special interrogatories and returned a verdict in favor of the three plaintiffs for economic damages in the amount of $45,000. The jury also awarded Sandra Kilduff damages in the amount of $5000 for emotional distress and awarded Sandra and David Kilduff punitive damages in the amount of $16,000. The trial court, *D. Dorsey, J.,* denied the defendants' motion to set aside the verdict and their motion for remittitur. The defendants filed an appeal in the Appellate Court, and we transferred the matter to this court pursuant to Practice Book § 4023. We now affirm the judgment of the trial court.

---

[1] Thomas Germain, the trustee in bankruptcy for Sandra and David Kilduff, Sr., is also a plaintiff in this action. For the purposes of this opinion, the term "plaintiffs" will be used to refer to Sandra and David Kilduff, Sr.

The jury reasonably could have found the following facts. In 1983, the plaintiffs began falling behind in the payments on the mortgage of their home in Berlin when the Social Security Administration terminated the disability income benefits received by David Kilduff for a back injury that prevented him from working. While his appeal of that termination was pending, Connecticut Housing Finance Authority (CHFA), the mortgagee, brought a foreclosure action against the plaintiffs and five other parties who held liens on the plaintiffs' property. One of the lienholders was Adams, Inc., which had operated a store under the name of House of Adams and had sold furniture to the plaintiffs on credit several years earlier. The amount of the judgment lien held by Adams, Inc., was $1012.62.[2] On November 26, 1984, a judgment of strict foreclosure was rendered for CHFA, and the court set September 3, 1985, as the law day for the plaintiffs in order to give them a significant period of time within which to resolve the Social Security appeal. The law days for the five lienholders were set for the following week, with the final law day of September 10, 1985, assigned to Adams, Inc.

Prior to September 3, 1985, the Social Security Administration reinstated David Kilduff's disability income benefits and agreed to pay retroactive benefits for the period when those benefits had been terminated. By the end of August, 1985, the plaintiffs had received approximately $9000 in retroactive benefits, and Sandra Kilduff reported this fact to the attorney who represented them in the foreclosure action, so that he could take the steps necessary to avoid foreclosure. Their attorney failed, however, to take any action to open the foreclosure judgment in order to extend the plaintiffs' law day of September 3, 1985. After learn-

---

[2] The House of Adams ceased operations in 1983, but Adams, Inc., has maintained its corporate existence.

ing on September 4 or 5 that Adams, Inc., intended to redeem, the attorney advised Sandra Kilduff to "bundle up" her family and go see Bernard Adams to explain her family's plight and to request that he not take their home.

On September 6, the plaintiffs and two of their children went to the Adamses' home and asked Bernard Adams if he was going to take their house. Bernard Adams said that he only wanted the money he was owed, not their house. When Sandra Kilduff offered to pay him the outstanding debt with the Social Security checks she had brought, Bernard Adams refused the payment, explaining that he wanted to contact his attorney to learn the exact amount due.[3] Neither of the Adamses mentioned that on the two days prior to the plaintiffs' visit, Bernard Adams had inspected the Kilduff home three times[4] and that earlier in the day on September 6 he had delivered a check to his attorney to effect the redemption of the plaintiffs' home.

On the weekend of September 7 and 8, 1985, Sandra Kilduff called the Adamses' home several times and was told by the defendants that she would be informed on September 9 of the amount due Adams, Inc. The defendants never informed the plaintiffs of this amount. On September 10, Adams, Inc., obtained title to the Kilduff home by paying $49,410.34 to CHFA and receiving a satisfaction of judgment. The Kilduff family was forced to leave their home at the beginning of October, 1985. Approximately four months later, Adams, Inc., sold the house for $100,000.

---

[3] Violet Adams was also present for at least part of the time while her husband was talking to Sandra Kilduff. According to Sandra Kilduff, Violet Adams told the Kilduffs, "we're not taking your house, we have a beautiful house of our own."

[4] Violet Adams accompanied her husband on one of the trips to inspect the Kilduff home.

In 1986, the plaintiffs filed for bankruptcy. The following year the plaintiffs brought an action against their former attorney for negligence, breach of contract and fraud. The damages sought in that suit were the same as those sought in the fraud count brought in the present case, with the exception that the Kilduff children were also named as plaintiffs in the former suit and sought damages for emotional distress resulting from the attorney's alleged negligence. The plaintiffs received $125,000 when this suit was settled prior to trial.

In this appeal, the defendants challenge the trial court's denial of their motion to set aside the verdict and their motion for remittitur on numerous grounds, and also assert that several aspects of the court's charge to the jury were incorrect.[5] In addition, the defendants contend that the admission of a psychiatric report concerning Sandra Kilduff was improper. We reject each of these claims.

[5] The defendants allege that the trial court improperly denied the motion to set aside the verdict because: (1) they did not make any false representations and, even if they did, the plaintiffs did not rely on those representations; (2) the plaintiffs suffered no legal injury as a result of the alleged fraud because their law day had already passed when the representations were made; (3) the court should not have allowed the jury to consider the issue of damages because the plaintiffs did not bring an action in equity to protect their interests; (4) the court should not have allowed the jury to consider awarding economic, emotional or punitive damages; (5) the plaintiffs failed to utilize procedures available to them during the bankruptcy proceedings which might have mitigated their damages; and (6) the court should not have allowed the jury to determine whether Adams, Inc., was a "sham" corporation so as to allow the piercing of the corporate veil.

With respect to the denial of their motion for remittitur, the defendants argue that the $125,000 settlement that the plaintiffs received from their former attorney constitutes recovery for the same injuries alleged in the present case and that the trial court should have used this amount to offset the economic and emotional damages awarded by the jury.

The defendants also challenged the following aspects of the trial court's instructions to the jury: (1) the burden of proof in a fraud action; (2) the effect of a tender of payment; (3) the circumstances under which the cor-

### I

The defendants claim that the trial court should have set aside the verdict because the plaintiffs had no interest in their home after their law day passed on September 3, 1985, and, therefore, that they could have suffered no legally cognizable injury from the misrepresentations that subsequently were made on September 6, 1985. We disagree.

The dispositive issue in determining if the plaintiffs were in fact injured by the defendants' conduct is whether the plaintiffs lost a viable opportunity to retain their interest in their home that they otherwise would have pursued had the misrepresentations not been made. To make that determination, a brief review of the relevant facts is necessary. Sandra Kilduff told her attorney that Bernard Adams had said that he did not intend to take their home. The attorney testified that, if he had known that Adams, Inc., intended to redeem, he would have pursued one or both of the following options: (1) filing a bankruptcy petition; or (2) filing a motion to extend the law day prior to September 10, 1985, and, if that motion had been denied, filing an appeal of the denial. A loan manager for CHFA testified that, given the significant amount of equity that the plaintiffs had in their home, CHFA would have given consideration to reinstating the plaintiffs' mort-

---

porate veil can be pierced; (4) the inclusion of instructions on the concept of "acting in concert" in response to the jury's question concerning agency; and (5) the court's failure to use the charge requested by the defendants concerning legal injury.

We note that several of these claims are absolutely without merit, inadequately briefed or redundant. We have recently noted with respect to a similar manner of appellate advocacy that "[a] shotgun approach does a disservice both to this court and to the party on whose behalf it is presented." *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991).

gage even after the passing of their law day on September 3, 1985. Finally, Sandra Kilduff testified that she had contacted all of the other lienholders to explain the plaintiffs' predicament and stated that each of these parties had agreed not to redeem the property and had agreed to make arrangements for a payment schedule. In fact, none of those parties exercised their redemption rights on their respective law days.

If the plaintiffs had filed a bankruptcy petition prior to the redemption by Adams, Inc., an automatic stay would have been imposed that would have barred temporarily any further proceedings in the foreclosure action, including the defendants' redemption. 11 U.S.C. § 362 (a). If the plaintiffs had filed a motion to extend their law day pursuant to General Statutes § 49-15[6] and that motion had been granted, the plaintiffs then would have had an opportunity to make arrangements for the payment of the lienholders and an opportunity to arrange with CHFA to reinstate the mortgage.

In summary, there is sufficient evidence in the record to demonstrate that the plaintiffs would have been able to retain their interest in their home had they pursued one or both of the procedures indicated. If either of these courses of action had been pursued successfully, Adams, Inc., would not have been able to obtain absolute title to the property on September 10, 1985. Because the plaintiffs did not pursue the options available to protect their ownership rights as a result of the

---

[6] "[General Statutes] Sec. 49-15. OPENING OF JUDGMENTS OF FORECLOSURE. Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer."

Adamses' misrepresentations, we reject the defendants' claim that the plaintiffs suffered no injury as a matter of law.[7]

## II

The defendants also assert that the plaintiffs are barred from seeking damages in an action at law for their misrepresentations because the plaintiffs did not pursue the following alternative remedies: (1) filing an action in equity to obtain relief from the operation of the foreclosure judgment after title became absolute in the defendants; see *Crane* v. *Loomis,* 128 Conn. 697, 700, 25 A.2d 650 (1942); *Hoey* v. *Investors' Mortgage & Guaranty Co.,* 118 Conn. 226, 230, 171 A. 438 (1934); *Merry-Go-Round Enterprises, Inc.* v. *Molnar,* 10 Conn. App. 160, 162 n.1, 521 A.2d 1065 (1987); or (2) seeking to have the bankruptcy trustee void the transfer of title to their home to Adams, Inc., on the grounds that the transfer was a fraudulent conveyance.[8] We need not speculate on the likelihood of success of such alternative remedies[9] because the defendants are unable to cite any authority, and our research has revealed

[7] The defendants also argue that the plaintiffs did not prove a legal injury because they presented no evidence concerning the disposition of the claim of a third party not named as a defendant in the foreclosure action who may have had a lien of some type against the Kilduff home. Because that party was not named in the original foreclosure action, the potential existence of such a lien has no bearing on whether the plaintiffs proved that they lost a legitimate opportunity to protect their property rights.

[8] The defendants assert that the plaintiffs also could have moved to open the foreclosure judgment at any time prior to September 10, 1985, when title became absolute in Adams, Inc. We have noted, however, that the plaintiffs' failure to follow this course of action was a result both of their attorney's failure to pursue this option and of the misrepresentations made by the Adamses, and does not serve to prohibit the plaintiffs from seeking damages.

[9] The record indicates that Adams, Inc., sold the Kilduff home to a third party shortly after it obtained title to the property. The plaintiffs' ability to restore their interest in their home may therefore have been foreclosed by the existence of a bona fide purchaser.

none, to support their claim that the plaintiffs were required to exhaust those remedies before they were entitled to sue for damages in an action at law. In fact, the general rule is that a defrauded party has the right to choose between the legal and equitable remedies available. *Barnes* v. *Eastern & Western Lumber Co.,* 205 Or. 553, 593, 287 P.2d 929 (1955); *Horner* v. *Ahern,* 207 Va. 860, 867, 153 S.E.2d 216 (1967); 37 Am. Jur. 2d, Fraud and Deceit § 327.

The defendants also appear to claim that because the plaintiffs did not bring this action until approximately two years after Adams, Inc., obtained title, they were prohibited from bringing a claim for damages. We reject this argument as being wholly unsupported. The defendants do not contend that this action was barred by any statute of limitations, and we find no support for a laches defense. See *Papcun* v. *Papcun,* 181 Conn. 618, 620, 436 A.2d 282 (1980).

### III

The defendants next claim that the trial court should not have allowed the jury to consider awarding Sandra Kilduff damages for emotional distress because such damages are not available in a fraud action. We disagree.[10]

A plaintiff in a fraud action is entitled to recover "any consequential damages resulting directly from the fraud." *Crowther* v. *Guidone,* 183 Conn. 464, 469, 441 A.2d 11 (1981); *Miller* v. *Appleby,* 183 Conn. 51, 57, 438 A.2d 811 (1981). " 'The damages to be recovered in an action of this character are such as are the natural and proximate consequence of the fraudulent representation complained of; and those results are

---

[10] The defendants' claim that the evidence was insufficient to allow the jury to consider awarding punitive damages is meritless. See *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987).

proximate which must be presumed to have been within the contemplation of the defendant as the probable consequence of his fraudulent representations.' *Kornblau* v. *McDermant,* 90 Conn. 624, 632, 98 A. 587 (1916)." *Miller* v. *Appleby,* supra, 58. The issue, therefore, is whether damages for emotional distress can ever constitute consequential damages recoverable in a fraud action.

Although several courts have denied recovery for mental distress in a fraud action on the ground that damages in such an action are solely intended to compensate the plaintiff for pecuniary loss; see, e.g., *Moore* v. *Slonim,* 426 F. Sup. 524, 527 (D. Conn.), aff'd, 562 F.2d 38 (2d Cir. 1977), citing 37 C.J.S., Fraud § 141 (f), p. 469; *Ellis* v. *Crockett,* 51 Haw. 45, 52, 451 P.2d 814 (1969); *Jourdain* v. *Dineen,* 527 A.2d 1304, 1307 (Me. 1987); *Harsche* v. *Czyz,* 157 Neb. 699, 710–11, 61 N.W.2d 265 (1953); see 3 Restatement (Second), Torts § 525; we concur with those jurisdictions that allow the recovery of emotional damages that are the natural and proximate result of fraud. See *Holcombe* v. *Whitaker,* 294 Ala. 430, 433–34, 318 So. 2d 289 (1975); *Rosener* v. *Sears, Roebuck & Co.,* 110 Cal. App. 3d 740, 755, 168 Cal. Rptr. 237 (1980), appeal dismissed, 450 U.S. 1051, 101 S. Ct. 1772, 68 L. Ed. 2d 247 (1981); *Trimble* v. *Denver,* 697 P.2d 716, 730 (Colo. 1985); *Food Fair, Inc.* v. *Anderson,* 382 So. 2d 150, 154–55 (Fla. App. 1980); *Captain & Co.* v. *Stenberg,* 505 N.E.2d 88, 100 (Ind. App. 1987); *Ditcharo* v. *Stepanek,* 538 So. 2d 309, 314 (La. App.), cert. denied, 541 So. 2d 858 (La. 1989); *Crowley* v. *Global Realty, Inc.,* 124 N.H. 814, 818–19, 474 A.2d 1056 (1984); *McRae* v. *Bolstad,* 32 Wash. App. 173, 178–79, 646 P.2d 771 (1982), aff'd, 101 Wash. 2d 161, 676 P.2d 496 (1984); see generally A. Merritt, "Damages for Emotional Distress in Fraud Litigation: Dignitary Torts in a Commercial Society," 42 Vand. L. Rev. 1, 3–6 (1989).

This conclusion is consistent with our decisions allowing the recovery of damages for emotional harm in other contexts. See *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 62–63, 578 A.2d 1054 (1990) (action brought pursuant to General Statutes § 31-290a [b]); *Buckman* v. *People Express, Inc.,* 205 Conn. 166, 173–74, 530 A.2d 596 (1987) (allowing a claim for emotional distress arising from the defendant's failure to enable the plaintiff to continue insurance coverage); *Morris* v. *Hartford Courant Co.,* 200 Conn. 676, 681–82, 513 A.2d 66 (1986) (cause of action for infliction of emotional distress could be based on unreasonable conduct of employer in discharging employee); *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978).

In *Montinieri* v. *Southern New England Telephone Co.,* supra, we held that a plaintiff may recover for unintentional infliction of emotional distress even if the distress does not result in subsequent bodily injury and the plaintiff was not at risk of harm from physical impact. We limited such recovery, however, to cases where "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Id.; see also *Buckman* v. *People Express, Inc.,* supra, 173; *Morris* v. *Hartford Courant Co.,* supra, 683. We conclude that the same standard should apply to plaintiffs seeking damages for unintentionally-caused emotional distress resulting from fraud.[11] See *Goldberg* v. *Mallinckrodt, Inc.,* 792 F.2d 305, 309–10 (2d Cir. 1986) (applying the test under New York law for recovery of damages for the tort of unintentional infliction of emotional distress to an emotional damages claim in a fraud action).

---

[11] The plaintiffs did not claim that the defendants intended to cause them emotional distress. See *Morris* v. *Hartford Courant Co.,* 200 Conn. 676, 681 n.3, 513 A.2d 66 (1986).

The trial court properly instructed the jury that, in order to award damages for emotional distress, it had to find that the Adamses' misrepresentations were the proximate cause of the emotional distress suffered by Sandra Kilduff.[12] The court also properly instructed the jury that the type of harm suffered must have been a reasonably foreseeable consequence of the defendants' actions. We conclude, therefore, that the damages award for emotional distress suffered by Sandra Kilduff should not be set aside. We note, however, that such damages must be specially pleaded and are only recoverable when "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Montinieri* v. *Southern New England Telephone Co.,* supra, 345.[13]

## IV

In its charge to the jury concerning the burden of proof, the trial court stated that the plaintiffs had the burden of proving fraud, and that each of the elements

---

[12] Although the complaint also sought damages for mental distress suffered by David Kilduff, the plaintiffs presented no evidence in support of this claim and the trial court instructed the jury to consider only the emotional distress claim of Sandra Kilduff.

[13] The complaint clearly states the plaintiffs' claim for damages for emotional distress. Although neither the complaint nor the trial court's instructions to the jury made any reference to the foreseeability test set forth in *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978), which we conclude should apply to claims for emotional distress in fraud actions as well, we do not consider this omission material under the circumstances of this case. In *Buckman* v. *People Express, Inc.,* 205 Conn. 166, 173–74, 530 A.2d 596 (1987), this court disregarded similar omissions because the appeal was not before the court pursuant to a motion to strike, the defendant had not objected to the court's charge on those grounds and the defendant could not claim that it was not fairly apprised of the claim for emotional damages. Because these same circumstances exist in the present case, we conclude that the jury's award of damages for emotional distress should not be set aside.

of fraud except damages must be proven by clear and satisfactory, or clear, precise and unequivocal, evidence. The court further instructed the jury, however, that the plaintiffs had to prove their damages by a fair preponderance of the evidence. The defendants objected to this charge on the ground that the "clear and satisfactory," or "clear, precise and unequivocal" standard of proof applies to all the elements of fraud, including damages. They assert that the delivery of this instruction requires that the verdict be set aside. We disagree.

It is well established that common law fraud must be proven by a higher standard than a fair preponderance of the evidence.[14] This middle tier standard has

[14] The following reasons are commonly cited as justification for requiring a more exacting burden of proof in fraud actions: (1) fraud usually must be proven through the use of circumstantial evidence so that a heightened standard is imposed to reflect the latitude allowed in admitting evidence of fraud; *Disner* v. *Westinghouse Electric Corporation,* 726 F.2d 1106, 1110 (6th Cir. 1984); *Smith* v. *Rhode Island Co.,* 39 R.I. 146, 154, 98 A. 1 (1916); 37 Am. Jur. 2d, Fraud and Deceit § 468, p. 646; 37 C.J.S., Fraud § 114, p. 431; (2) evidence of fraud must be sufficient to overcome the presumption that people are innocent of moral turpitude or crime; *Verrastro* v. *Middlesex Ins. Co.,* 207 Conn. 179, 183, 540 A.2d 693 (1988); *Apolito* v. *Johnson,* 3 Ariz. App. 232, 236, 413 P.2d 291, modified on other grounds, 3 Ariz. App. 358, 414 P.2d 442 (1966); 37 C.J.S., Fraud § 114, p. 430; (3) in equity cases, a higher burden of proof is imposed to justify the availability of broader remedies than those available in an action at law for damages; *Batka* v. *Liberty Mutual Fire Ins. Co.,* 704 F.2d 684, 688 (3d Cir. 1983) (applying New Jersey law); C. McCormick, Evidence (3d Ed.) § 340; and (4) a person found guilty of fraudulent conduct suffers a "stigma of guilt" regardless of whether the underlying action was civil or criminal. *Riley Hill General Contractor, Inc.* v. *Tandy Corporation,* 303 Or. 390, 407, 737 P.2d 595 (1987).

A review of the case law on the development of the burden of proof in fraud actions sheds no light on which, if any, of these factors were determinative in this court's adoption of the "clear, precise and unequivocal" standard. In *Basak* v. *Damutz,* 105 Conn. 378, 382–83, 135 A. 453 (1926), we applied the "clear, precise and unequivocal" standard to the plaintiff's claim that the defendant was equitably estopped from denying ownership of certain land on the ground that the defendant was party to a fraudulent

been described as "clear and satisfactory evidence" and as "clear, precise and unequivocal evidence." *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 181, 540 A.2d 693 (1988); *Aksomitas* v. *Aksomitas*, 205 Conn. 93, 100,

---

conveyance. That standard was applied for the first time to an action at law for damages resulting from fraud in *Shaub* v. *Phillips, Inc.*, 117 Conn. 54, 58, 166 A. 671 (1933), citing *Basak* v. *Damutz,* supra, 382. *Shaub* implicitly overruled prior case law in which we had indicated that fraud need be proven only by a preponderance of the evidence. *Daly Bros., Inc.* v. *Spallone,* 114 Conn. 236, 240–43, 158 A. 237 (1932); see *Bennett* v. *Gibbons,* 55 Conn. 450, 454, 12 A. 99 (1887); cf. *Water Commissioners* v. *Robbins,* 82 Conn. 623, 640, 74 A. 938 (1910) (fraud must be proven by "clear, strong, natural, and logical" evidence, but the fact that fraud is not to be presumed does not add to the plaintiff's burden of proof). The *Shaub* court, however, gave no explanation of why it was imposing the higher standard. *Shaub* v. *Phillips, Inc.,* supra.

It does not appear that any of the four reasons noted above provide a clear explanation for our imposition of a higher burden of proof. We had recognized the latitude allowed in the admission of evidence of fraudulent conduct long before we imposed a higher burden of proof in fraud actions. See, e.g., *Robert* v. *Finberg,* 85 Conn. 557, 562, 84 A. 366 (1912); *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21, 37 (1864). Similarly, our recognition of the role played by circumstantial evidence in proving fraud predates our decision in *Shaub* v. *Phillips, Inc.,* supra. See, e.g., *Sallies* v. *Johnson,* 85 Conn. 77, 80–81, 81 A. 974 (1911).

We have also rejected the suggestion that proof of criminal activity in a civil action requires a more stringent quantum of proof. *Verrastro* v. *Middlesex Ins. Co.,* supra, 183, citing *Mead* v. *Husted,* 52 Conn. 53 (1884), and *Munson* v. *Atwood,* 30 Conn. 102 (1861). Similarly, we have stated that the fact that fraud is not to be presumed does not serve to increase the burden of proof otherwise applicable to a plaintiff in a fraud action. *O'Dea* v. *Amodeo,* 118 Conn. 58, 60, 170 A. 486 (1934); *Water Commissioners* v. *Robbins,* supra. Moreover, this rule was part of our law while the preponderance of the evidence standard was still the burden of proof in fraud actions. See *Morford* v. *Peck,* 46 Conn. 380, 384–85 (1878); *Huntington* v. *Clark,* 39 Conn. 540, 557 (1873).

The third rationale for imposing a higher burden of proof for fraud was clearly not relevant in the development of our case law. Ever since the "clear, precise and unequivocal standard" was first applied to an action at law for fraud in *Shaub* v. *Phillips, Inc.,* supra, we have required a higher burden in legal as well as equitable actions. See, e.g., *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981); *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546, 391 A.2d 170 (1978); *Creelman* v. *Rogowski,* 152 Conn. 382, 384, 207 A.2d 272 (1965). Finally, although we have never dis-

529 A.2d 1314 (1987); *J. Frederick Scholes Agency* v. *Mitchell,* 191 Conn. 353, 358, 464 A.2d 795 (1983); *Alaimo* v. *Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982). It is also settled law that " '[t]he essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it;[15] (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69 (1970); *Clark* v. *Haggard,* 141 Conn. 668, [673,] 109 A.2d 358 (1954); *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525 (1937); *Bradley* v. *Oviatt,* 86 Conn. 63, 67, 84 A. 321 (1912); *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 A. 980 (1894).' *Miller* v. *Appleby,* [supra, 54–55]." *Maturo* v. *Gerard,* 196 Conn. 584, 587, 494 A.2d 1199 (1985); D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 135.

The plaintiff in an action at law for fraud must prove that he has been injured in order to recover. *Beik* v. *Thorsen,* 169 Conn. 593, 594, 363 A.2d 1030 (1975); *Helming* v. *Kashak,* 122 Conn. 641, 643, 191 A. 525 (1937); *Macri* v. *Torello,* 105 Conn. 631, 633, 136 A. 479 (1927). A plaintiff who has not suffered damage or injury cannot pursue an action at law or in equity for nominal damages resulting from fraudulent actions.

cussed the stigma attached to allegations of fraud, it is not clear whether this rationale is distinct from the previously noted presumption that one is innocent of criminal or morally base acts.

Although the rationale for our imposition of a higher burden of proof for fraud claims is shrouded in the mist of the common law, we do not find it necessary in deciding this case to articulate our rationale for continuing to apply an elevated standard or to address whether we should abandon that standard.

[15] We have held that a misrepresentation made without belief in its truth or recklessly made can also provide the basis for a fraud claim. *Clark* v. *Haggard,* 141 Conn. 668, 673, 109 A.2d 358 (1954).

*Beik* v. *Thorsen,* supra, 594–95.[16] It is clear that proof of damages is an essential element of a fraud action. The issue, therefore, is whether the plaintiff must prove damages by the "clear and satisfactory" standard or the "preponderance of the evidence" standard.

Although numerous courts have stated that a heightened burden of proof applies to all the elements of the cause of action for fraud, including damages; see, e.g., *Fruit Industries Research Foundation* v. *National Cash Register Co.,* 406 F.2d 546, 548 (9th Cir. 1969) (Washington law); *Davis* v. *Upton,* 250 S.C. 288, 290–91, 157 S.E.2d 567 (1967); see generally 37 Am. Jur. 2d, Fraud and Deceit § 480; we are aware of only one court that has addressed specifically whether it is appropriate to apply a higher burden of proof on damages to a plaintiff in a fraud action than that usually applicable in civil actions. See *Dizick* v. *Umpqua Community College,* 287 Or. 303, 599 P.2d 444 (1979). In *Dizick,* the Supreme Court of Oregon concluded that if a jury finds that a defendant made a fraudulent representation, "there is no reason why the burden of proof of damages in fraud should be different from proof of damages caused by any other tort." Id., 311. We agree with the *Dizick* court, and we conclude, therefore, that the trial court properly instructed the jury that the plaintiffs were required to prove their damages by a preponderance of the evidence and to prove all the other elements of fraud by clear and satisfactory evidence.[17]

---

[16] To the extent that *Meader* v. *Trout Brook Ice & Feed Co.,* 96 Conn. 454, 462–64, 114 A. 668 (1921), held that nominal damages are recoverable in an action for fraud, that case was implicitly overruled by *Beik* v. *Thorsen,* 169 Conn. 593, 594–95, 363 A.2d 1030 (1975).

[17] We do not perceive a great risk of confusing jurors by instructing them to apply different standards of proof to different elements of a fraud claim. Such instructions should be no more difficult to comprehend than instructions concerning the burden of proof in other types of cases. For example, in a criminal action where the defendant relies on both an affirmative

## V

The defendants make several claims concerning the propriety of allowing the corporate veil of Adams, Inc., to be pierced and the trial court's instructions to the jury concerning this issue.[18] The court specifically instructed the jury that the Adamses could be found personally liable if the facts of this case warranted piercing the corporate veil. The responses to the special interrogatories indicate that the jury concluded that the corporate veil should be pierced,[19] and it subsequently imposed personal liability on both of the individual defendants. We need not address these claims, however, because we conclude that it was unnecessary to pierce the corporate veil in order to find that the Adamses were personally liable for their misrepresentations.

Both the Adamses were officers of Adams, Inc., and Bernard Adams was the sole shareholder. It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of

---

defense and a defense that is not considered to be an affirmative defense, jurors are instructed that the defendant must prove the affirmative defense by a preponderance of the evidence while the state must disprove the other defenses beyond a reasonable doubt. General Statutes § 53a-12. Furthermore, in civil actions involving an issue of mitigation of damages, jurors are instructed that the plaintiff bears the burden of proving damages, but the defendant bears the burden of proof on the issue of mitigation. *Preston* v. *Keith,* 217 Conn. 12, 21–22, 584 A.2d 439 (1991).

[18] See footnote 5, supra.

[19] The jury's responses to the special interrogatories included the following:

"7. Was Mr. Adams acting as an agent for Adams, Inc. at the time of his alleged discussion with Mrs. Kilduff? *Yes.*

"7a. Was Mrs. Adams acting as an agent for Adams, Inc. at the time of her alleged discussion with Mrs. Kilduff? *Yes.*

"8. Was Adams, Inc. a corporation in existence as a sham or for fraudulent or illegal purposes? *Yes.*"

whether the corporation itself is liable.[20] *Donsco, Inc.* v. *Casper Corporation,* 587 F.2d 602, 606 (3d Cir. 1978); *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 404, 363 A.2d 160 (1975); *First National Bank & Trust Co.* v. *Manning,* 116 Conn. 335, 340, 164 A. 881 (1933); *Semple* v. *Morganstern,* 97 Conn. 402, 404, 116 A. 906 (1922); H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 230; 19 Am. Jur. 2d, Corporations § 1882. The same rule would impose personal liability on a shareholder as well. *Wyatt* v. *Union Mortgage Co.,* 24 Cal. 3d 773, 785, 598 P.2d 45, 157 Cal. Rptr. 392 (1979); 13A W. Fletcher, Cyclopedia of the Law of Private Corporations (Perm. Ed. 1985) § 6214. The trial court properly instructed the jury on this alternative basis for finding the Adamses personally liable, and the jury's responses to the interrogatories indicated that it concluded that the Adamses had made fraudulent misrepresentations. Therefore, Bernard and Violet Adams were personally liable for their participation in the fraud, regardless of whether the corporate veil should have been pierced.

## VI

The defendants next assert that the trial court's denial of their motion for remittitur failed to take into account the fact that the plaintiffs received $125,000 from the attorney who represented them during the foreclosure proceedings, in settlement of the action

---

[20] Under the doctrine of respondeat superior, the liability of a corporation for the actions of an officer depends upon whether the officer is acting within the scope of his authority. *Donsco, Inc.* v. *Casper Corporation,* 587 F.2d 602, 606 (3d Cir. 1978); H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 230. The defendants do not challenge the jury's findings that the Adamses were acting as agents for Adams, Inc., when the misrepresentations were made. Furthermore, the corporation clearly ratified the actions of the Adamses when it obtained title to the Kilduff home pursuant to the foreclosure proceedings. Therefore, Adams, Inc., was properly found liable for the acts of its agents.

they had filed against him for negligence, breach of contract and fraud.[21] The defendants contend that a plaintiff in a fraud action cannot recover for damages for which compensation has already been received, and that the effect of the denial of their motion for remittitur was to allow such a double recovery. Although we agree with the legal principles upon which the defendants rely, we are not persuaded that they are controlling under the particular circumstances of this case.

As a general rule, the plaintiff in a fraud action is not entitled to recover damages to the extent that compensation has already been received for the same loss. *Toho Bussan Kaisha, Ltd.* v. *American President Lines, Ltd.*, 265 F.2d 418, 420 (2d Cir. 1959) (applying New York law); *Central National Chicago Corporation* v. *Lumbermens Mutual Casualty Co.*, 45 Ill. App. 3d 401, 408, 359 N.E.2d 797 (1977). The general rule against double recovery of damages arising from fraud is consistent with this court's adherence to the "time-honored maxim that ' "[a] plaintiff may be compensated only once for his just damages for the same injury." ' *Virgo* v. *Lyons,* 209 Conn. 497, 509, 551 A.2d 1243 (1988), quoting *Gionfriddo* v. *Gartenhaus Cafe,* [15 Conn. App. 392, 406, 546 A.2d 284 (1988)]; see also *Peck* v. *Jacquemin,* 196 Conn. 53, 70 n.19, 491 A.2d 1043 (1985) ('an injured party is entitled to full recovery only once for the harm suffered')." *Gionfriddo* v. *Gartenhaus Cafe,* 211 Conn. 67, 71, 557 A.2d 540 (1989). " 'A pay-

---

[21] The defendants attempted to introduce the amount of the settlement into evidence, but the trial court, relying upon General Statutes § 52-216a, denied this request. The court did allow the defendants to introduce into evidence a copy of the complaint filed against the plaintiffs' former attorney, after redacting the portions of the complaint that had been struck. The court also allowed the defendants to refer to the complaint during their cross-examination of the attorney. The defendants do not challenge the trial court's conclusion that § 52-216a barred the admission of the settlement amount into evidence, and therefore we express no opinion on that issue.

ment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.' " Id., 72 n.6, quoting 4 Restatement (Second), Torts § 885 (3).[22]

The general rule that the plaintiff in a fraud action cannot recover for losses that have been reimbursed does not end our inquiry, however. In *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 537, 562 A.2d 1100 (1989), we affirmed the denial of a motion for remittitur in circumstances similar to those in this case because there was no evidence in the record concerning the allocation of the prior settlement between the two counts of the complaint and we therefore could not determine whether the damages were excessive as a matter of law. The record in the present case suffers from a similar deficiency. There is no evidence in the record concerning the allocation of the settlement among the plaintiffs' claims for economic, emotional and punitive damages.[23]

---

[22] It is unnecessary for us to determine whether the plaintiffs' former attorney and the defendants were successive or joint tortfeasors. The general rule against double recovery applies in either instance. See *Gionfriddo* v. *Gartenhaus Cafe,* 211 Conn. 67, 70, 557 A.2d 540 (1989) (joint tortfeasors); *Fieser* v. *St. Francis Hospital & School of Nursing, Inc.,* 212 Kan. 35, 40–41, 510 P.2d 145 (1973) (successive tortfeasors); *Harris* v. *Grizzle,* 599 P.2d 580, 585–86 (Wyo. 1979) (successive tortfeasors); 4 Restatement (Second), Torts § 885 (3), comment f; see generally annot., 39 A.L.R.3d 260, § 3.

[23] The damages sought in the action against the plaintiffs' former attorney were substantially the same as those sought in the present case with the exception that the plaintiffs' three children, who are not parties to the present action, sought damages for emotional distress in the prior suit. Although that portion of the complaint against the attorney had been stricken prior to settlement, the plaintiffs had intended to appeal that deci-

Further, we have no means for determining that allocation, knowledge of which is necessary to determine whether the verdicts were in fact excessive. "[I]t is not our function to speculate on that 'allocation.' This reason alone is sufficient basis for us to let stand the trial court's decision . . . on its denial of the defendant[s'] claim on excessiveness and a remittitur . . . ." Id., 537.[24]

## VII

The defendants also claim that the trial court should not have admitted into evidence a copy of a psychiatric report concerning Sandra Kilduff prepared by Eugene F. Lawlor, M.D., a psychiatrist whom she had consulted in 1987 and 1988.[25] The plaintiffs introduced this report in support of Sandra Kilduff's claim for emotional distress resulting from the loss of her home. The defendants challenge the admission of this document on two grounds: (1) the trial court improperly relied on General Statutes § 52-174 (b)[26] in admitting the document;

sion before the case was settled. We have no way of determining what portion of the settlement, if any, related to the children's claim for emotional distress.

[24] Our review of this issue is further hampered by the fact that the defendants failed to file a motion for articulation in order to request that the trial court explain the basis for its denial of the motion for remittitur. See *Double I Limited Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 84 n.19, 588 A.2d 624 (1991).

[25] The defendants also contend that the trial court should not have admitted the curriculum vitae of Lawlor. Because they offer no distinct basis for their objection to the admission of this document, we do not address this claim.

[26] General Statutes § 52-174 provides in pertinent part: "(b) In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist and that the report and bill were

and (2) the report did not establish a causal connection based on reasonable medical certainty between the emotional distress suffered by the plaintiff and the actions of the defendant. We conclude that the report was properly admitted.

The defendants contend that a psychiatric report is not admissible under the terms of § 52-174 (b). That section provides that "[i]n all actions for the recovery of damages for *personal injuries* or death . . . any party offering in evidence a signed report . . . of any treating *physician* . . . may have the report . . . admitted into evidence as a business entry . . . ." (Emphasis added.) The defendants argued at trial that § 52-174 (b) was not applicable because a psychiatrist is not a "physician" and because the term "personal injuries" was not intended to include emotional distress. We disagree.

" 'If the words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive since where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended, but what intention it expressed by the words that it used. *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 159, 454 A.2d 1258 (1983); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980).' *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983)." *Struckman* v. *Burns,* 205 Conn. 542, 545–46, 534 A.2d 888 (1987). "In the construction of the statutes, words and

made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist."

phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). "In the absence of ambiguity, statutory language should be given its plain and ordinary meaning." *Pintavalle* v. *Valkanos,* 216 Conn. 412, 416–17, 581 A.2d 1050 (1990).

Applying these rules of statutory construction, we conclude that the report of a psychiatrist is admissible under § 52-174 (b). A "physician" is defined as "a person skilled in the art of healing: one duly authorized to treat disease: a doctor of medicine . . . ." Webster's Third New International Dictionary; see also Black's Law Dictionary (5th Ed.). A "psychiatrist" is defined as "a *physician* specializing in psychiatry." (Emphasis added.) Webster's Third New International Dictionary; see also General Statutes §§ 17a-580 (12) and 52-146d (7). It cannot be disputed that psychiatrists are doctors of medicine and that they are licensed to practice that discipline, and we therefore conclude that psychiatrists are subsumed in the term "physician" in § 52-174 (b).

The defendants' argument that emotional distress is not a "personal injury" as that term is used in § 52-174 (b) ignores the plain meaning of that term as well. A "personal injury" is defined as "an injury affecting one's physical and mental person as contrasted with one causing damage to one's property." Webster's Third New International Dictionary. Numerous jurisdictions have held that emotional distress or mental anguish is a type of "personal injury." E.g., *Ex Parte First Alabama Bank of Montgomery, N.A.,* 461 So. 2d 1315, 1318 (Ala. 1984); *Bates* v. *Superior Court, Maricopa County,* 156 Ariz. 46, 49, 749 P.2d 1367 (1988); *Blanchette* v. *Contributory Retirement Appeal Board,* 20 Mass. App. 479, 482, 481 N.E.2d 216 (1985);

*McCroskey* v. *Cass County,* 303 N.W.2d 330, 336 (N.D. 1981); see *Izzo* v. *Colonial Penn Ins. Co.,* 203 Conn. 305, 313, 524 A.2d 641 (1987) (term "personal injury" in insurance policy is broader than the term "bodily injury"). On the basis of the plain meaning of the terms employed in § 52-174 (b), we conclude that Lawlor's report was properly admitted under that statute.

The defendants' second claim concerning the psychiatric report is meritless. In *Struckman* v. *Burns,* supra, 554–55, we stated that "[e]xpert opinions must be based upon reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony. . . . When reports are the substitute for testimony, the entire report should be examined, not only certain phrases or words." We have reviewed the report in question and conclude that it satisfies the standard outlined in *Struckman* v. *Burns,* supra.

We have examined the remaining claims made by the defendants and conclude that they do not warrant significant attention because they were either inadequately briefed, duplicative or lacked merit.

The judgment is affirmed.

In this opinion the other justices concurred.