[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs filed a three count complaint, return date of January 1, 2001, claiming the following: Count I — unpaid rent for January through April 1999; Count II was withdrawn at the start of trial; and Count III — payment on a defaulted promissory note.
The defendant responded with five special defenses claiming the following:
1. The promissory note is unenforceable because it was obtained by fraud, numerous misrepresentations and an illegal scheme/sale of business;
2. The parties had reached a global agreement to settle all claims including the promissory note;
3. As part of the settlement agreement money was paid against the note, the claim was abandoned and any contracts were rescinded;
4. This defense was withdrawn at trial when the plaintiff withdrew Count II of the complaint; and
5. Payment was tendered to plaintiffs counsel, Attorney Mawhinney, in full and final satisfaction. Jin Sung Bok received the funds.
From the evidence presented, and the assessment of the credibility of the witnesses, the Court finds the following facts:
The plaintiff Jin Sung Bok owns the shopping center located at 648 Center Street, Manchester, CT. There are several stores in the shopping center including a pizza store. On October 11, 1997, Jin Sung Bok entered into a five-year lease agreement with Kevin Bonowski.[1]
Paragraph No. 4 of the lease agreement prohibited Kevin Bonowski from assigning the lease without the prior consent of Jin Sung Bok. CT Page 14869
Kevin Bonowski defaulted on the lease agreement by failing to pay the rent for several months. On June 4, 1998, Kevin Bonowski sold his business, Gambino's Pizzeria, to Jin Sung Bok for $8,000.00. The business included the assets and goodwill. The assets were primarily the equipment needed to operate the pizzeria. The equipment was described in the attachment titled "Schedule A". Thomas Monyhan facilitated in the sale and drafted the Bill of Sale.[2]
Prior to this sale, Thomas Monyhan conducted a manual and computer search on the business, Gambino's Pizzeria. He discovered a lien by Baltovi on the majority of the equipment listed on Schedule A. Thomas Monyhan informed the plaintiff Jin | Sung Bok of the lien and reviewed it with him three times. He also informed Jin Sung Bok that there could be a challenge to the sale of the equipment. Kevin Bonowksi knew of the possibility of the lien as he had previously signed a security agreement[3] where he had granted a security interest in the equipment to Mary Baltovi. Jin Sung Bok and Kevin Bonowski went ahead with the sale. In the bill of sale, Kevin Bonowski represented that he was transferring the business free and clear of all liens. Jin Sung Bok, knowing this was a false representation, entered into the agreement. In this agreement Mr. Bok also agreed to release Mr. Bonowski from all claims, including a promissory note for $6,000.00. This agreement terminated the lease agreement and the promissory note between Kevin Bonowski and Jin Sung Bok.
On June 6, 1998, the plaintiff Jin Sung Bok entered into a lease agreement with the defendants Emmanuel S. Datta and Kenneth M. Wright for the retail space occupied by Gambino's Pizzeria.[4] Thomas Monyhan facilitated and drafted the agreement. This agreement was designated as an assignment of the earlier lease agreement between Jin Sung Bok and Kevin Bonowski, with a new five-year option to renew.
On June 6, 1998, B.L. Limited Partnership of Manchester, Connecticut, (a business owned by Jin Sung Bok, his wife and his in-laws) entered into a Purchase and Sale Agreement with the defendants Emmanuel S. Datta and Kevin M. Wright.[5] The first page of the agreement is dated July 6, 1998 and the signature date is June 6, 1998. The purchase price was $30,000.00. The defendants agreed to pay $10,000.00 by June 30, 1998 and execute a promissory note for $20,000.00.
This purchase and sale agreement transferred the goodwill and the assets of Gambino's Pizzeria. The assets, as described in Schedule A, were substantially the same assets on which Mary Baltovi had placed a lien. Thomas Monyhan assisted and drafted the purchase and sale agreement. Neither Mr. Monyhan nor Mr. Bok informed the defendants of the CT Page 14870 existence of the lien. No evidence was presented as to when or whether ownership of Gambino's Pizzeria had been transferred from the plaintiff Jin Sung Bok to the plaintiff B.L. Limited Partnership.
On June 6, 1998, the defendants executed the promissory note.[6]
Thomas Monyhan assisted and drafted the note. The plaintiff, B.L. Limited Partnership and the defendants, Emmanuel Datta and Kevin M. Wright also signed a security agreement.[7] This agreement included options for satisfying the debt on default. The options included repossessing the equipment or accelerating the payments. Thomas Monyhan assisted and drafted the security agreement.
Emmanuel Datta and Kenneth Wright took possession of Gambino's Pizzeria pursuant to the lease agreement effective July 15, 1998. On August 3, 1998, Mary Baltovi served the defendants with a Writ, Summons and Complaint and Notice of Application for Prejudgment Remedy.[8] This was the first time the defendants became aware of the lien on the equipment. The lien had been placed on the equipment to satisfy the security agreement entered into on February 12, 1997, between Mary Baltovi and Doughboy's Pizza and William Kevin Bonowski.[9] Mary Baltovi, Kenneth Wright and Emmanuel Datta resolved the complaint by entering into a Stipulation on September 22, 1998.[10]
In August 1998, the defendants notified Jin Sung Bok about the lien. They entered into discussions about the sale of the equipment that the plaintiff knew to be subject to a lien. The defendants notified Mr. Bok that they would not pay rent and would not pay on the note until the issue concerning ownership of the equipment was resolved.
In September 1998, Mr. Bok asked his attorney, Kent Mawhinney, to become involved in the discussions and resolve the matter. Attorney Mawhinney at the time of trial had been in practice for over ten years and had represented Mr. Bok and his companies since 1996. From the testimony and the exhibits[11] Attorney Mawhinney entered into discussions with Attorney Comollo who represented the defendants.
In May 1999, Attorney Mawhinney reached a settlement agreement on behalf of the plaintiff. The plaintiffs and the defendants agreed to the following: (1) to enter into a new lease agreement; (2) payment in the amount of $6,400.00 to the plaintiff; (3) each party would sign a release of all claims against each other; and (4) neither party would sue the other.
In May 1999, the plaintiff B.L. Limited Partnership and the defendant Emmanuel Datta entered into a new three year lease agreement from June 1, 1999 to May 31, 2000.[12] On May 21, 1999, Emmanuel Datta signed the CT Page 14871 release.[13] On May 24, 1999, Kenneth Wright signed the release.[14]
A check dated May 14, 1999, in the amount of $6,400.00[15] was sent to plaintiffs counsel, Attorney Mawhinney. Attorney Mawhinney forwarded the funds and the release for signature to the plaintiff Jin Sung Bok.
In November 1999, Jin Sung Bok returned the money to his new attorney. He did not sign the release[16] and brought suit against the defendants in January 2000. The money is being held in escrow. Neither defendant brought suit against the plaintiff. Emmanuel Datta at the time of trial was still operating the pizzena.
 DISCUSSION
There are two issues presented.
1. Whether the promissory note was obtained fraudulently; and
2. Whether there was a "global settlement" that resolved all claims including the promissory note.
1. FRAUD
The defendants claim that the note is unenforceable because it was obtained by fraud. There are four elements of an action in fraud: (1) false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. Rizzo Pool Co. v. Del Grosso, 232 Conn. 666,683, 657 A.2d 1087. Fraud may not be presumed but must be proven by . . . "clear, precise and unequivocal evidence." Masotti v. Bristol SavingsBank, 43 Conn. Sup. 360, 366, 653 A.2d 836 (1994); Kilduff v. Adams,Inc., 219 Conn. 314, 328, 593 A.2d 478 (1991); Alaimo v. Rover,188 Conn. 36, 39, 448 A.2d 207 (1982).
In this case the plaintiff made a false representation as to the assets, namely that the equipment was free of all liens and encumbrances. The plaintiff knew this to be false as Mr. Monyhan had told him that he had found the lien and that the sale of the equipment could be challenged. The defendants purchased the business which included the equipment, believing it to be free and clear of all liens. Shortly after the purchase, Mary Baltovi, the lien holder made a claim on the equipment. The defendants settled that claim by agreement with the lien holder for the release of the lien. The defendants were clearly injured. The plaintiff made the false representation in order to get a quick sale. The Security Agreement between the plaintiff and the defendants noted that "time is of the essence." The defendants purchased the CT Page 14872 business including the equipment which was subject to a lien they were not aware of. The plaintiff failed to disclose that information to the defendants. The lien holder asserted a claim made against the equipment. Therefore the defendants suffered a loss in order to secure the release of the lien.
2. GLOBAL SETTLEMENT
"The general rule is that admissions, if relevant and material, made by an attorney incidental to the general authority of the attorney to represent his client in | connection with and for the purpose of controlling the matter committed to him, are admissible against the client." Collens v. New Canaan Water Co., 155 Conn. 477, 496, 234 A.2d 825
(1967). "Clients generally are bound by the acts of their attorneys."Monroe v. Monroe, 177 Conn. 173, 181, 413 A.2d 819, appeal dismissed,444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d 14 [1979].
The policy of encouraging settlements counsels against piecemeal offers of judgment. Blakeslee Arpai Chapman Inc. v. El Construction, Inc.,239 Conn. 708, 746, 687 A.2d 506 [1997]. Once reached, a settlement agreement cannot be repudiated by either party. Whether the parties in fact concluded a settlement agreement is determined by the intention of the parties, manifested by their words and acts. Hess v. Dumouchel PaperCo., 154 Conn. 343, 347, 225 A.2d 797 [1996].
The Court finds that the parties had reached a settlement agreement. Attorney Mawhinney represented the plaintiff Mr. Bok and his companies from 1996 through 1999. The plaintiff did not use Attorney Mawhinney for the agreements with Kevin Bonowski or the present defendants. He chose to use Thomas Monyhan, a businessman who facilitates business "deals".
The plaintiff returned to Attorney Mawhinney in September 1999 to have him settle the issues of the sale of the equipment and the promissory note. Attorney Mawhinney did reach a settlement agreement on behalf of the plaintiff. The plaintiff and the defendants performed substantially in accordance with that agreement for approximately six months. Emmanuel Datta signed a new lease agreement and continued to operate the business. The defendants signed the releases and did not bring suit against the plaintiff as to the encumbered equipment and the note. The plaintiff received $6,400.00 which he kept for almost six months. The plaintiff did not sign the release and sued the defendants in January 2001. The words and actions of the parties support the conclusion that a "global settlement" had been reached and did not bring suit against the plaintiff concerning the sale of the equipment and the note. The plaintiff received $6,400.00 which he kept for almost six months. The plaintiff however, did not sign the release. The words and actions of the parties CT Page 14873 support the conclusion that a settlement agreement had been reached.
 CONCLUSION
1. The plaintiff committed a fraud on the defendants and therefore the promissory note is void.
2. There was a global settlement agreement which resolved all claims between the parties, including the promissory note.
The plaintiff failed to prove by a preponderance of the evidence that he is owed the unpaid rent and payment on the note. The defendants met their burden of proof as to the special defenses of fraud and a global settlement.
In accordance with the "global settlement agreement" the Court orders the funds currently held in escrow, in the amount of $6,400.00 be released to the plaintiffs within twenty days.
As to Count I — Judgment for the defendant.
As to Count III — Judgment for the defendant.
 Juliett L. Crawford Superior Court Judge