[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
Milrite, LLC (Milrite) seeks a prejudgment remedy in the form of an attachment against the defendants Washington Street Investors, LLC (Washington Street) David Waldman, Sharon Rivken and David Adam Realty, Inc. (Realty). The application arises out of the sale of a two story commercial office building located at 63 Glover Avenue in Norwalk, Connecticut by Washington Street to Milrite which occurred on June 14, 2002. A hearing on the application took place on August 12 and 13, 2002 and the parties submitted additional papers on September 17, 2002 in accordance with a scheduled established at the hearing.
Milrite's proposed complaint alleges that on June 14, 2002 it purchased the 63 Glover Avenue building from Washington Street based on alleged false representations of Washington Street, its principal Waldman, Realty, Waldman's real estate brokerage business, and its employee, Rivken. The representations involved the status and condition of 63 Glover Avenue's only tenant, Agicorp, Ltd (Agicorp). The complaint asserts a count alleging fraud and a second count alleging a violation of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110a
et seq.
Briefly summarized, the evidence presented at the hearing established the following facts. Milrite was established to invest in commercial real estate. Christopher Brophy was a member of Milrite. In early May 2002, Milrite learned that the 63 Glover Avenue property was for sale. Milrite made an offer on the property which was accepted and a contract of sale was executed, dated May 16, 2002. (Exhibit A.) During the negotiations Rivken told Brophy that Agicorp was a solid tenant, paid its rent and would be a good tenant going forward. Brophy testified that Rivken explained that the first floor of the building, which was virtually empty, was used by Agicorp to house temporary workers used on large projects. CT Page 14186
The contract provided Milrite with a thirty day period to inspect the premises and undertake whatever other investigation or evaluation it deemed necessary, during which period Milrite could terminate any of its obligations under the contract. (Exhibit A. ¶ 20.) During this period Brophy testified that Milrite did practically nothing to investigate its prospective tenant, Agicorp. Although there was ample opportunity, Brophy testified that Milrite did not interview Agicorp, investigate its finances, do a credit check, review tax returns, check for litigation involving judgments against Agicorp, or ask for references. (Transcript PM Sess., August 12, 2002, pp 91-97.) This was confirmed by Agicorp. (Transcript AM Sess., August 12, 2002, pp 50-51, 79.) According to Brophy, Agicorp's website was reviewed and its financial reports were requested from Washington Street, but not received. (Transcript PM Sess., August 12, 2002, pp 92-93.)
The sale closed on June 14, 2002. Sometime after June 20, 2002, Agicorp stopped doing business and essentially closed its doors. Waldman and Washington Street learned of this shortly after June 21, 2002 and Brophy a day or two later.
The contract of sale called for delivery to Milrite of a `tenant estoppel certificate'. Shortly before the June 14, 2002 closing Washington Street provided an estoppel certificate to Milrite, signed by the president of Agicorp, which stated that its rent had been paid through June 30, 2002 and that there was no existing event of default on its rent. (Exhibit 6). In fact, Agicorp had not paid the June rent on June 10 when it signed the certificate and had informed Waldman on that day that it could not pay the June rent until a large receivable had been collected. When it provided the estoppel certificate to Milrite, or at least before the closing on June 14, Washington Street knew Agicorp had not paid the June rent, although there is no evidence to indicate that Washington Street knew the severity of Agicorp's financial woes.
The contract between Milrite and Washington Street was amended on June 14, 2002, the day of the closing. (Exhibit B.) In that amendment, Milrite waived certain claims or causes of action including those "based upon [Washington Street] having inaccurately stated any information concerning the premises." Id., ¶ 6.
 DISCUSSION
A claim of fraud requires (1) a false representation of a statement of fact (2) which was known to be untrue by the party making it (3) which was made to induce another party to act or rely upon it, and (4) the other party did so act or rely upon it to its detriment. Weismen v.CT Page 14187Kasper, 233 Conn. 531 (1995). Fraud must be proven by the standard of "clean and satisfactory" or "clear and unequivocal" evidence which is a higher standard than preponderance of the evidence.Kilduff v. Adams, 219 Conn. 314, 327-328 (1991). In considering an application for a prejudgment remedy based on claims of fraud, it is appropriate for the court in determining whether there is probable cause to support the application, to evaluate the claims and defenses in light of the higher standard of proof. See CommonCondominium Associations v. Common Associates, 192 Conn. 150, 153-54
(1984).
Milrite contends that the representation by Rivken that the empty space of the first floor of the building was used by Agicorp for temporary workers was false. Whether it was false is not clear from the evidence. However, there is no evidence that Rivken knew it was false, and, Milrite knew the floor was empty and could have investigated further. Additionally, Rivken's representations were expressly not relied on by Milrite according to the contract language. In the contract of May 16, 2002 Milrite acknowledged that there were no representations about the building except as expressly set forth in the contract. (Exhibit A, ¶ 4.02.) The contract is silent about the use or occupancy of the first floor.
Milrite also contends that the statements made in May by Rivken and Waldman to the effect that Agicorp would be a good tenant going forward were false and actionable. The court disagrees. These were statements of opinion, not fact. Moreover, there is little evidence that the defendants knew them to be untrue, for Agicorp had been a good tenant in the building throughout Washington Street's ownership and even before. And again, the provisions of Paragraph 4.02 of the contract would appear to bar any claim.
The court does find the evidence sufficient to meet the probable cause standard of General Statutes § 52-278d that false information was provided to Milrite with respect to the status of Agricorp's rent payment. Milrite contends that this false information was relied upon and it would not have gone forward with the purchase of 63 Glover Avenue if it had received accurate information. The court does not find, on the evidence presented to date, that there is probable cause to support this contention. Although Brophy did testify to that effect, the established facts seem to speak otherwise. Milrite made little effort to investigate the financial condition of Agicorp, and the latter had not been particularly forthcoming about its financial condition to the defendants. At most, the information in the estoppel certificate conveyed that the June rent had been paid. The certificate was not, and did not purport to CT Page 14188 be, a guarantee that future rent would be paid. While information that Agicorp was late on its rent might have galvanized Milrite into investigating further, the evidence is slim at best that such an investigation would have led to Milrite to exercise its right to cancel the sale transaction, which it was eager to complete, on June 14, 2002.
The defendants also contend that the provisions of the June 14, 2002 contract amendment quoted above provide a defense to Milrite's claims. On the face of it the amendment language supports the defendants' contention, although little evidence has been presented, at this stage, to indicate the intention of the parties to the amendment.
Based on the foregoing the court finds that there is not probable cause that the plaintiffs claims of fraud and a CUTPA violation (which relies on essentially the same allegations) will be sustained. Furthermore, the court is mindful that there is an issue as to the amount of damages sustained, if any, and that the plaintiff has already collected the $30,000 security deposit of Agicorp.
The application of a prejudgment remedy is denied.
___________________ ADAMS, J. CT Page 14189