[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff lender has brought suit against Julio and Yolanda Ferrante to foreclose a mortgage he claims to hold on their premises containing eighteen acres and located in Monroe. His first count alleges loans on February 10, 1989 to their nephew Vincent G. Amorando of $87,500.00 and $30,000 evidenced by his notes, and that the notes were guaranteed by the CT Page 7586 Ferrante's and secured by a mortgage on the aforementioned property. He alleges that the guaranty and mortgage were executed by Nellie L. Ferrante their daughter, by virtue of her power of attorney for them. The plaintiff alleges in a second count another loan to Amorando of $460,000.00 evidenced by two notes, one for $360,000 and the other for $100,000.00 on January 17, 1989 which were guaranteed by the Ferrantes and secured by a mortgage on the Ferrante's same premises in Monroe. Those instruments are also alleged to be executed by Nellie L. Ferrante under her power of attorney for her parents, the landowners and the defendants. The plaintiff also makes all the usual claims of a strict mortgage foreclosure, possession of the premises, monetary damages, interest, costs of the suit, a deficiency judgment and reasonable attorneys fees. The defendant's answer consists of a denial and insufficient knowledge to both counts. Their special defenses are: 1) failure of consideration; 2) the power of attorney to Nellie L. Ferrante is invalid: 3) Nellie L. Ferrante signed the guaranty and mortgage by fraud, misrepresentation and/or coercion and 4) the notes were conditioned upon closing the sale of a hotel in New Orleans, before payment is due. The plaintiff's reply is a denial and insufficient knowledge, of the special defenses. The defendants have filed a counterclaim, the first count of which alleges their power of attorney was invalid on the mortgage of $117,500.00 because they were not signed in accordance with47-5 Conn. Gen. Statutes. The second alleges the same ground as to the $450,000.00 mortgage and both counts claim a discharge of the mortgages.
The facts are found as follows: Amorando executed a power of attorney to Attorney Mark Rubenstein who executed as such attorney on February 12, 1989 the notes for $360,000.00, $100,000.00, $87,500.00 and $30,000.00 to the plaintiff. On January 17, 1989 Nellie L. Ferrante under her purported power of attorney of Julia and Yolanda executed guarantees of the notes for $360,000.00, $87,500, $100,000.00 and $30,000.00. A power of attorney is recorded in the Monroe Town Clerk's Office from Yolanda to Nellie L. Ferrante dated August 12, 1988 another is so recorded from Julio to Nellie L. Ferrante dated August 22, 1988, and both are recorded on October 12, 1988. The mortgages to secure the aforementioned notes are executed by Nellie L. Ferrante under a power of attorney from her parents, the defendants, on January 17, 1989. There is also in evidence another power of attorney from Julio Ferrante to Nellie L. Ferrante also dated August 22, 1988, however the witnesses and the notary public on the last mentioned power of attorney differ from those on the prior recorded power of attorney. The same is true of a second power of attorney from Yolanda to Nellie L. Ferrante dated also August 22, 1988. Attorney Rubenstein never met Julio or Yolanda during his handling of the notes, mortgages CT Page 7587 and guarantees, however, Nellie L. acknowledged to him that she knew what she was signing and that she was signing the guarantees and mortgages by virtue of her power of attorney for her parents. The plaintiff or Attorney Rubenstein never spoke to Julio and Yolanda Ferrante during the negotiations for the loans and it is unexplained how Nellie L. got involved in the loans and mortgages except that somehow she did get to Attorney Rubenstein's office and executed the instruments in evidence. Julio and Yolanda deny signing the powers of attorney recorded in the Monroe Clerk's Office and their testimony is buttressed by a handwriting expert who states that their signatures appended to the instruments, which constitute the powers of attorney are not their signatures. While her opinion is a qualified one since she compared photostats of the original powers of attorney, it is authoritative enough for this court to accept it. Julio does admit signing something for Amorando at his grocery store which he did not take the time to read since Amorando was in a hurry to catch an airplane and he was serving customers at that time. He might have signed a power of attorney but no evidence was introduced to show what the instruments were. No evidence was adduced to show that Yolanda signed anything at that time or on any other occasion. A witness who signed both instruments doesn't remember Julia and Yolanda appearing and the notary on them executed the instruments in Trumbull where the witness says she never appeared. Interestingly the witness and notary were employed by Amorando at that time.
It is also interesting to note that Nellie L. Ferrante was in the court room during the trial and Amorando was located in Stamford also at that time. Neither party sought to present them as witnesses in spite of the fact that their testimony would have been productive of probative evidence. None of the parties is entitled to the benefits of the rule enunciated in Secondino vs. New Haven Gas Company, 147 Conn. 672, 675 since the two requirements for the operation of the rule: the availability of the witness, and the fact that he must be a witness whom the party would naturally produce applies equally to all parties. With Nellie L. Ferrante in the court room she was available to all parties, and Amorando was in Stamford and available to them thus neither party can claim the Secondino presumption against the other party or both are entitled to it. Both witnesses were available and both could have provided probative evidence of the issues which were presented to the court and both were equally important to both parties.
The court finds that the purported signatures on the power of attorney from Julio and Yolanda Ferrante to their daughter Nellie L. Ferrante were forgeries. They were not signed by the purported conveyors of the powers of attorney. Who signed them CT Page 7588 the court is unable to ascertain but it is able to ascertain that Julio and Yolanda Ferrante did not sign them. It is also evident that Nellie L. Ferrante did in fact execute the guarantees and the mortgages, knowing what she was doing at Attorney Rubenstein's office. What is also evident is that the witnesses and notary public were not present when Julio and Yolanda Ferrantes' purported signatures were allegedly placed on the powers of attorney, which would have resulted in the powers of attorney being invalid. It should be noted that the witnesses and notary were employed by Amorando. Section 1-43
Conn. Gen. Statutes provides "The executing of this statutory short form power of attorney shall be duly acknowledged by the principal in the manner prescribed for the acknowledgement of a conveyance of real property." Julio and Yolanda Ferrante were not present when the powers of attorney were signed by the forger and acknowledged by the notary appearing thereon, Kim Anderson and therefore both powers do not meet the requirements of that statute and are invalid: "It is well recognized that where the conveying instrument is void even a bona fide purchaser or mortgagor for value and without notice will not acquire an estate or interest as against the owner. Burby Real Property 264 p. 479." Graham v. Zimmerman, 181 Conn. 367, 378. It follows that without valid powers of attorney the mortgages executed by Nellie L. Ferrante as attorney for Julio and Yolanda Ferrante was in fact invalid and without any force and effect. Although the failure by Julio and Yolanda to question Nellie L. about the powers of attorney and the mortgages deeds does raise some questions these questions were never answered for this court. The court finds that the defendants have established not only by a preponderance of the evidence but also by clear and convincing evidence that the powers of attorney were forgeries and the mortgage deeds given pursuant to them were invalid. See Kilduff vs. Adams, 219 Conn. 314, 327.
The plaintiff's use of the statute 42a-3-307(i) of the presumption of the genuineness of the signatures is misplaced since that section deals with negotiable instruments as distinguished from non negotiable guarantees, mortgage notes, and mortgages 43a-3-102(a). In fact the defendants have proved the existence of the forged signatures. The plaintiff's claim that Julio and Yolanda signed the powers of attorney in a manner unlike their true regular signatures so that they could set up a defense such as the one presented here is so speculative and devoid of facts as to make discussion of it unnecessary. The plaintiff's claims that Julio and Yolanda authorized the transactions (guarantees powers of attorney and mortgages)before the fact or ratified them thereafter are without any basis in the evidence and is essentially a rehashing of their previous claims and therefore does not merit discussion. Judgment may enter for the defendants Julio and Yolanda CT Page 7589 Ferrante on the complaint and for the defendants on their counterclaim against the plaintiff together with costs of the action. Section 49-13(E) provides "When a mortgage has become invalid and in any of such cases no release of encumbrance to secure such note or evidence has been given. . .", the mortgage should be discharged, and it is so ordered.
IRVING LEVINE, STATE TRIAL REFEREE