[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's complaint dated July 31, 1995. The defendant filed its answer and two special defenses dated August 31, 1995. The defendant then filed a revised special defense dated October 16, 1995 and its second revised special defenses dated October 27, 1995. The plaintiff then filed his reply to the defendant's special defenses dated November 10, 1995. The plaintiff then filed an offer of judgment for $30,000.00 dated January 14, 1997. The plaintiff in this matter is the George E. McWeeney Co., Inc., and the defendant is the Hartford Fire Insurance Company.
The dispute arises out of an insurance policy issued by the defendant which insured the plaintiff against loss or damage caused by theft. The plaintiff claims such a loss occurred and the defendant denies coverage. In its first special defense the defendant alleges the plaintiff breached the policy of insurance between the parties by failing to comply with the conditions and duties required by the policy and in its second special defense it alleges that the plaintiff committed fraud and false swearing in connection with the presentation of its claim. The complete special defenses of the defendant are set forth as follows:
FIRST SPECIAL DEFENSE
 Plaintiff breached the policy of insurance between the parties by failing to comply with the conditions and duties required by the policy in one or more of the following ways, and therefore, no coverage exists under the subject policy of insurance:
 (a) by intentionally concealing and/or misrepresenting material facts or circumstances, including his ownership and interest in the property claimed to have been present at the premises and to have been stolen;
 (b) by intentionally concealing and/or misrepresenting material facts or circumstances, including the quantity and/or value of the property claimed to have been present at the premises and to have been stolen;
 (c) by intentionally concealing and/or misrepresenting the extent of his prior insurance CT Page 8178 claims; and
 (d) by otherwise failing to fulfil the terms, conditions and requirements of the policy in ways which may be disclosed during the course of discovery proceedings.
 SECOND SPECIAL DEFENSE
 The Plaintiff committed fraud and false swearing in connection with the presentation of the claim in one or more of the following ways, and therefore, no coverage exists under the subject policy of insurance:
 (a) by intentionally concealing and/or misrepresenting material facts or circumstances, including his ownership and interest in the property claimed to have been present at the premises and to have been stolen;
 (b) by intentionally concealing and/or misrepresenting material facts or circumstances, including the quantity and/or value of the property claimed to have been present at the premises and to have been stolen;
 (c) by intentionally concealing and/or misrepresenting the extent of his prior insurance claims; and
 (d) by such other acts as may be disclosed during the course of discovery proceedings.
Thomas McWeeney, the president of the plaintiff corporation, testified that the plaintiff was in the business of selling promotional items and business gifts. He stated some of the items the plaintiff sold were in inventory and others were ordered as they were sold. He stated that the plaintiff's insurance broker was Golden, O'Neill Gebhardt. He further stated he purchased his theft insurance policy through that firm for a premium of $2,149.00. He stated that on Saturday morning, February 26, 1994, at about 10:30 A.M. he went to his office with his two children, ages five and six years old. Mr. McWeeney testified he went inside his office and noticed a cold draft. He then saw glass on CT Page 8179 the floor and he went over to where it was and he found the side door was broken through. The door was opened and Mr. McWeeney pushed it closed. Mr. McWeeney testified that he then noticed the computer missing. He stated he then took a mental inventory of items that were missing. He stated he does not know how to operate the computer and that he keeps the inventory of his business in his mind. He stated he called the glass company to repair the window in the side door, which they did for a charge of $55.50. (Exhibit E.) Then on March 14, 1994, the glass company repaired the back door which was also damaged in the burglary. The cost for repairs to the back door was $339.20. (Exhibit E.) Mr. McWeeney testified he called the West Haven Police Department shortly after he discovered the burglary. He stated he believes he swept up the glass from floor which came from the broken window in the side door before a police officer arrived.
Patrolman Carl Flemming of the West Haven Police Department testified he investigated the burglary at the plaintiff's place of business at 830 Jones Hill Road, West Haven. He testified that he arrived at 10:30 A.M. at the plaintiff's place of business on February 26, 1994 and was met by Thomas McWeeney. Mr. McWeeney told him that the plaintiff's business had been broken into between 6:00 P.M. on February 25, 1994 and 10:00 A.M. on February 26, 1994. He stated Mr. McWeeney told him the perpetrators broke in through the side door and exited through the garage door. Patrolman Flemming stated Mr. McWeeney had swept up the broken glass from the side door before he arrived at the scene. Patrolman Flemming also stated he did not remember seeing any footprints in the snow outside of either the back door or side door. He testified on that date there was snow on the ground. Mr. McWeeney testified he saw footprints in the snow outside of the side door. Patrolman Flemming testified there was no evidence of the back door being jimmied. Patrolman Flemming testified that when he spoke with Mr. McWeeney the latter was not sure what was stolen except for the computer and cash. He stated there was no evidence the computers were ripped up from their locations nor was any wiring coming out of the wall from where the computers were taken. Mr. McWeeney testified that the wiring for the computers came up through the floor and was ripped. Mr. McWeeney testified the wiring from the computer substations was left there. Further, Patrolman Flemming stated that Mr. McWeeney never told him the computers that were stolen were worth $37,000.00. He stated if he had been given this value, the West Haven Police Department would probably have sent a detective to further investigate this burglary. Patrolman Flemming stated that this CT Page 8180 was a typical burglary scene with nothing unusual about it. He stated the garage door did not appear to be broken. Patrolman Flemming testified that before he left the plaintiff's place of business he left a West Haven Police Department Stolen Inventory Sheet with Mr. McWeeney to be filled out. He told Mr. McWeeney to return it to the West Haven Police Department when it was filled out and it would then be attached to the burglary complaint. Mr. McWeeney submitted the Stolen Inventory Report to the Police Department on behalf of the plaintiff on March 8, 1994 according to Patrolman Flemming. (Exhibit D.) Patrolman Flemming testified that the plaintiff did not submit any subsequent supplementary stolen inventory reports after the filing of the original form.
The plaintiff corporation was formed many years ago by George E. McWeeney, Sr. During the years prior to 1992, Mr. McWeeney, Sr. ran the plaintiff's business, and he employed his two sons George E. McWeeney, Jr. and Thomas McWeeney, and his son-in-law, Harry Tuttle. In 1990 or thereabouts, George E. McWeeney, Jr. had a dispute with his father and left the plaintiff's employment. George E. McWeeney, Sr. died in 1992, and upon his death his son Thomas McWeeney took over the plaintiff's business. Harry Tuttle who testified in this case left the plaintiff's employment in January 1993 after working for the plaintiff for twenty-six years. He testified he was upset that he did not receive a part of the business upon Mr. McWeeney's death. He is now in a similar business, and on February 26, 1994, shared office space with the plaintiff in the plaintiff's building. Thomas McWeeney testified he became president of the plaintiff in March or April 1993.
Joan Welch was the claims adjuster for the defendant when this loss occurred. She testified that when she originally contacted Thomas McWeeney concerning the plaintiff's loss he was very vague about the loss and only when pressed did he say he thought the loss value would be about $7000. She instructed him how to file the claim on behalf of the plaintiff, and she sent him the necessary forms. She testified that Mr. McWeeney mailed to the defendant the Original Proof of Loss (Exhibit H) and the contents inventory (Exhibit 4) on or about March 28, 1994 (See Exhibit 3). She testified that she told Mr. McWeeney that she needed the original invoices for each item and any verification he might have for the replacement cost of the items. When she received the aforementioned documents, the invoices did not match up with items claimed to have been stolen. Thereafter Mr. McWeeney sent the defendant another Contents Inventory (Exhibit 6) on or about May 13, 1994. Ms. Welch testified that Mr. CT Page 8181 McWeeney insisted that he sent her all original invoices for the computer, but she stated she never received them.
Ms. Welch testified that she never saw Exhibit G before this suit was commenced. There was testimony it was given to the defendant on March 6, 1995. Mr. McWeeney testified he brought the mistakes on Exhibit G to the defendant's attention prior to its denial of his claim in December 1994. Exhibit G was a list of 50 items that the plaintiff claimed were stolen and insured under the subject policy and was in effect a revised Proof of Claim. She stated that item 9 on Exhibit G was a Special Edition Columbus Clock, and Mr. McWeeney claimed that it was purchased for $850.00 and that he could no longer purchase it from the manufacturer and that he had to purchase it on the market, and the cost was $1800.00. Ms. Welch stated she called the manufacturer and was told she could purchase it for a little over $900.00. Mr. McWeeney testified he later found this to be true. She stated there were other items which Mr. McWeeney stated were not available from the manufacturer when in fact they were. Mr. McWeeney testified that he told Ms. Welch that some of the invoices that he submitted were not for the actual items lost but were for items similar to said items. Ms. Welch denied this. The defendant examined Mr. McWeeney under oath on July 22, 1994 and July 29, 1994 (Exhibits 1 and 2) because they did not get satisfactory answers from Mr. McWeeney, and, further, they were not able to verify some of the invoices the plaintiff submitted. After the examination under oath, the defendant further examined this claim. They looked into why there appeared to be "white outs" on some invoices. For example, an item 40 on Exhibit G which was for a Lennox large Tracery Lamp (Exhibit HH), the name Harry Tuttle was whited out. That item was subsequently dropped from the claim. There was testimony that when a person's name appears on an invoice that item is for a customer of that person. Mr. Tuttle testified he did not know why his name was "whited out" and that he did not recognize the invoice. This item was also in the Plaintiff's Original Proof of Loss. Item 27 on Exhibit G was a Cross Pen for $39.00. Mr. Tuttle testified this was a pen he purchased as a graduation gift for his nephew (Exhibit JJ). This claim was also withdrawn by the plaintiff but was on the Original Proof of Loss claim. Item 8 on Exhibit G is for 30 Wedgewood Desk Clocks (Exhibit QQ). The original invoice was for 110 of said clocks. After reviewing this invoice, Mr. Tuttle stated that these clocks were ordered for Southern New England Telephone Company, and they were all delivered to them. The Plaintiff has made a claim for payment of $270.00 for the CT Page 8182 loss of 30 of these clocks.
Items 28 and 29 on Exhibit G are Cross Pens and are listed on Exhibit H, on the Plaintiff's Original Proof of Loss claim. The invoice for these items is Exhibit II which also has Harry Tuttle's name whited out. The original loss claim for these items totalled $306.00, and they were subsequently withdrawn by the Plaintiff. Harry Tuttle testified that Item #28 on Exhibit G were 29 Cross Pen and Pencil sets for his client, Gerber Technology. Exhibit II shows these items were billed out to his customer.
Items 42 and 43 on Exhibit G are two collection plates that the Plaintiff listed also listed on Exhibit H. The invoice for these items is Exhibit EE. The Plaintiff originally claimed a loss of $81.00 for these items. It has subsequently reduced that claim to $42.00 in Exhibit DDD. Harry Tuttle testified that Item 43 on Exhibit H was a "Mother's Day" plate which he gave as a gift to his wife in 1991, and the other plate (Item 42 on Exhibit G) was a Christmas Plate which was ordered for a customer of his.
On Exhibit G there were ten items that the plaintiff originally claimed as part of its loss and then subsequently withdrew these claims as being mistakenly submitted. These items were #5, 10, 21, 22, 27, 28, 29, 40, 48 and 49.
Ms. Welch testified that she informed Mr. McWeeney after she received Exhibit 6 (Contents Inventory) in May 1994 that she was rejecting the Proof of Loss he submitted (Exhibit H). She stated she sent him a new proof of loss form to fill out but that he never did. She stated she wanted to know when, where and from whom each item was purchased as well as the date thereof and the cost thereof. She stated that she recommended that the plaintiff's claim be denied after she reviewed the plaintiff's insurance policy, spoke with the defendant's attorney, reviewed the sworn statements Mr. McWeeney made and the inconsistencies therein, (Exhibits 1 and 2) about which inconsistencies Mr. McWeeney only said they were mistakes, the lack of many original invoices, and the statements of witnesses that were interviewed. She said George McWeeney, Jr., Harry Tuttle and a third person were interviewed in the investigation of this claim.
The most expensive item of the plaintiff's claim was the computer. On Exhibit G, the plaintiff lists the IBM computer value and four terminals with an Invoice Cost of $24,221.00 and a Replacement Cost of $35,464.00 on March 28, 1994, and $26,480.00 CT Page 8183 on February 29, 1996. It also lists an invoice cost on the latter date of $26,221.00. The plaintiff also claims a IBM computer software system loss with an invoice cost on March 28, 1994 and February 29, 1996 of $13,333.00, and a Replacement Cost of $19,400.00 on the latter date. (See Exhibit GGG). The IBM computer and software system relative thereto were purchased by the plaintiff in 1987 or 1988 and was upgraded in 1989 or 1990 (See Exhibits XX, YY and ZZ). On Exhibit DDD, the plaintiff estimated the value of its computer to be $20,000.00 on February 24, 1994. Gregory Ashayeri testified as expert in computer values for the defendant. He testified that the computer described in Exhibit GGG was an IBM RS/6000 system and was a much different computer system than the one the plaintiff lost in the burglary. He stated the price quote in Exhibit GGG was accurate, but it was for a much different computer. Mr. Ashayeri testified he never valued the plaintiff's computer software because it was never stolen. He stated the software could be recovered from a disk and tapes of the plaintiff that he reviewed. He stated that the actual cost value meant the value at the time of loss and that replacement cost was defined as the cost at the time to do all of the same functions that the subject computer could do. He testified the actual cash value of the plaintiff's computer on February 26, 1994 was $7,920.00, and the Replacement cost for that computer on that date was $11,400.00 (Exhibit 14). These values include $2,500.00 for installation costs, and this is an approximation. The values do not include sales tax amounts. Thomas McWeeney testified that the value of the plaintiff's computer on February 26, 1994 was between $20,000.00 and $30,000.00.
On December 20, 1994, the defendant sent the plaintiff a letter denying its claim for payment of its loss (Exhibit CCC) on the basis of fraud. On cross-examination Thomas McWeeney admitted that in 1993 or early 1994 he submitted false medical bills to Blue Cross/Blue Shield relative to treatment by a psychologist for his wife and children. These false bills totalled approximately $1700 according to him and payment was denied.
The plaintiff's claim for payment is $28,284.00 and is set forth in Exhibit DDD.
Thomas McWeeney testified his secretary was prone to make mistakes and that was one of the reasons so many mistakes were made initially on the Plaintiff's Proof of Loss and Contents Inventories. Mr. McWeeney also testified he kept a mental CT Page 8184 inventory of the items the business had in stock. This was a strange way to operate his business in the court's opinion. He testified he did not know how to run the computer, but he keeps the business' inventory in his mind.
The Defendant's policy insuring the Plaintiff for this claim reads in part:
C. Cancellment, Misrepresentation or Fraud
 This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
1. This policy
2. The Covered Property
3. Your interest in the Covered Property, or
4. A claim under this policy.
It is settled law that "`[t]he essential elements of an action in fraud. . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury Kilduff v. Adams, Inc., 219 Conn. 314, 329
(1991). The plaintiff in an action for fraud must prove that he has been injured in order to recover. ID. An insurer who raises this special defense must prove only that the insured wilfully concealed or misrepresented a material fact with the intention of deceiving the insurer. (Citation omitted) Unlike a party asserting a cause of action for common law fraud, an insurer who raises the special defense of concealment or misrepresentation does not have to prove that the insurer actually relied on the concealment or misrepresentation or that the insurer suffered injury. Rego v. Connecticut Insurance Placement Facility,219 Conn. 339, 347 (1991). The preponderance of evidence standard is the appropriate burden of proof to apply to an insurer's defense that a policy is void because the insured concealed or misrepresented material facts concerning a claim for coverage.IBID 344. Where the false swearing was not intentionally false, CT Page 8185 or the false statements not intentionally so, but made through mistake or an opinion honestly entertained, neither falls within the term "fraud or false swearing". . . . Davis-Scofield Co. v.Reliance Ins. Co., 109 Conn. 686, 689 (1929).
From the evidence the court finds that the Defendant has sustained its burden of proof on subsections A and B of both of its Special Defenses. The burden of proof required is by a fair preponderance of the evidence. The Plaintiff made claims for items it did not own which have been mentioned hereinbefore. The Plaintiff also overvalued items as stated hereinbefore and which it made a claim for reimbursement under the subject insurance policy. This court finds that these actions of making claim for items it did not own and for overvaluing items it did own was intentional on the part of the Plaintiff acting through its president, Thomas McWeeney. There were just too many inconsistencies in Mr. McWeeney's testimony, statements under oath, inventory lists and proof of loss claims for this court to find they were honest mistakes. The court found the defense witnesses to be very creditable. The court realized Mr. Tuttle stated that Thomas McWeeney was an honest person. However, most if not all of the ten claims for losses which were subsequently withdrawn by Mr. McWeeney had serious problems of proof concerning them. These claims should not have been made by Mr. McWeeney until he was positive of their validity. To withdraw them when he could not prove them does not convince this court that they were applied for originally in the honest belief that the plaintiff sustained a loss as to said items.
This court finds that the plaintiff has failed to sustain his burden of proof on its complaint and further that the defendant has sustained its burden of proof in subsections A and B of each of its special defenses.
Judgment may enter accordingly.
Sullivan, J.