## DONNA L. CRISCUOLO *v.* GEORGE M. SHAHEEN

Superior Court      Judicial District of      File No. CV98413072S
New Haven

Memorandum filed March 22, 1999

*Zeisler & Zeisler*, for the plaintiff.

*George M. Shaheen*, pro se, and *Kerin & Canty*, for the defendant.

BLUE, J. This case provides additional proof of Tolstoy's famous observation that each unhappy family is unhappy in its own way. The plaintiff, Donna Criscuolo (Criscuolo), is the daughter of the defendant, George Shaheen (Shaheen). Criscuolo claims that Shaheen has committed fraud, forgery, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The question presented by the motion to strike now before the court is whether her complaint contains the damages allegations that these various causes of action require. For the reasons set forth below, I find that all three counts of the complaint are fatally deficient.

The complaint alleges that on July 22, 1997, Shaheen forged Criscuolo's signature on a sales contract for the purchase of a condominium unit. At a closing in September, 1997, he accepted a deed for the property in Criscuolo's name. According to the complaint, Criscuolo had previously instructed Shaheen not to place her name on the contract, and Shaheen performed the alleged actions without her knowledge. "A few days later," following a conversation with Shaheen, Criscuolo signed a quitclaim deed transferring her interest in the property to Shaheen. For purposes of the motion now before the court, the critical claim in the complaint is the damages allegation, consisting of the following statement: "[A]s a result of Mr. Shaheen's illegal and fraudulent conduct, the plaintiff may potentially suffer increased tax liabilities, including but not limited to, Connecticut Gift Tax, Federal Gift Tax, and State of Connecticut Transfer Tax."

The complaint consists of three counts. The first count alleges common law fraud. The second count claims that Shaheen is liable for double damages pursuant to General Statutes § 52-565. The third count alleges a CUTPA violation pursuant to General Statutes § 42-110a et seq.

The action was commenced by service of process on May 11, 1998. Shaheen filed the motion to strike now before the court on December 22, 1998. The motion, which attacks all three counts of the complaint as legally insufficient, was heard on March 15, 1999. For the reasons stated below, the motion must be granted in its entirety.

The problem with all three counts is that the claim of damages set forth in the complaint is speculative at best. Criscuolo alleges that, as a result of Shaheen's conduct, she "may potentially suffer increased tax liabilities." This language is inescapably speculative. A

judge or jury considering the facts set forth in the complaint would not be permitted to award actual damages. Criscuolo conceded at the hearing that, if the case were to be tried today, she could receive only nominal damages.

Although some causes of action such as breach of contract, assault and battery, and trespass are complete without a showing of actual damages; see 4 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 25.1, pp. 491–92; this is not a characteristic of tort actions in general. Damage is a necessary element of most common law torts. This is largely a consequence of the historical development of civil tort liability. Historically, the law of civil liability took account "not of the moral shortcomings of the defendant, but only of the loss of the plaintiff; and this characteristic is reminiscent of the days when the compensation was regarded, not as a penalty for wrongdoing, but as a means whereby the plaintiff was induced to forgo his right to take revenge." 8 W. Holdsworth, A History of English Law (1927) p. 447. "When the actions on the case first began to be developed, the mediaeval notions as to the basis of civil liability were engrained in the minds of the lawyers." Id., p. 449. The following description of the early common law is informative: "It was . . . a general principle that for a wrong to be actionable it had to cause damage. Thus, ill-treating a servant or tenant, though wrong, was not actionable by the master or lord unless he suffered a loss of service or rent; a public nuisance, though an indictable wrong, gave no private action without damage; and it was arguable that the negotiorum gestor could escape liability if his intervention in the affairs of another, though wrongful, caused no loss. Every declaration in trespass concluded with an assessment of the damage alleged to have been suffered." Introduction, II The Reports of Sir John Spelman, 94 Publications of the Selden Society 221 (J. H. Baker ed., 1978).

In modern times, although the ill-treatment of servants and tenants is fortunately no longer the subject of judicial approbation, the requirement of actual damages remains central to the law of torts. "Rights . . . do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." *Carey* v. *Piphus*, 435 U.S. 247, 254, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." (Emphasis in original.) F. Harper, F. James & O. Gray, supra, § 25.1, p. 490. "[T]ort law is part of a dynamic consensus on how society should deal with injuries." Special Committee on the Tort Liability System, Report to the American Bar Association, Towards a Jurisprudence of Injury: The Continuing Creation of a System of Substantive Justice in American Tort Law (1984) p. 1–5. "With regard to the vast majority of torts, injury is thus a substantive element of the cause of action . . . ." *Amato* v. *Saratoga Springs*, 170 F.3d 311, 318 (2d Cir. 1999).

Examples of this "cardinal principle" abound in the law of torts. I can drive carelessly on the road, and if I fortuitously avoid hitting or frightening anyone, I have committed no act giving rise to civil tort liability regardless of the number of traffic offenses I may have committed in the process. I can have an unreasonably dangerous condition on my land, and if no one enters the property, I am free from civil liability. A little closer to the facts of this case, I can forge your name on a legal document belonging to me, and if I immediately throw the document into the fire, I am not liable to you regardless of whether I may have committed the crime of forgery.

With this background, it is appropriate to turn to the complaint. The causes of action asserted will be reviewed in the order in which they were pleaded.

The first count alleges common law fraud. It is well established in Connecticut that "[t]he plaintiff in an action at law for fraud must prove that he has been injured in order to recover." *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 329, 593 A.2d 478 (1991). This rule is central to the law of fraud. "Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise. Nominal damages are not awarded in deceit, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 110, p. 765. "Damages are for people who have been harmed. You cannot seek an award of damages for a fraud, therefore, before the fraud has harmed you." *Midwest Commerce Banking* v. *Elkhart City Centre*, 4 F.3d 521, 526 (7th Cir. 1993).

The facts of an old Massachusetts case are still instructive. The defendant induced the plaintiff to endorse a note by false representations. But although the fraud caused the plaintiff to become a guarantor of a note that he didn't want to endorse, the principal liability on the note remained that of the makers. The liability of the plaintiff consequently depended on the failure of the makers to pay. As of the time of the action there had been no such failure. Under these circumstances, the Supreme Judicial Court of Massachusetts held that: "If the holder receives his pay from the makers through the mortgage security or otherwise, the plaintiff will have suffered no actionable wrong. There will have been no concurrence of damage with fraud, within the rule on which such actions are founded. And as there has been no invasion of the plaintiff's right . . . there can be no recovery of even nominal damages in this action." *Freeman* v. *Venner*, 120 Mass. 424, 427 (1876).

The similarity of *Freeman* to the case at hand is striking. If Criscuolo ultimately incurs no tax liability, she will have suffered no actionable wrong. "There will have been no concurrence of damage with fraud, within the rule on which such actions are founded." Id. The damages asserted in a fraud action "must not be speculative or contingent." W. Prosser & W. Keeton, supra, § 110, p. 767. Under this rule, the first count fails to state sufficiently a common law fraud cause of action.

The second count of the complaint asserts that: "By improperly forging a sales agreement on the plaintiff's behalf and uttering said sales agreement in the context of the closing on the property, the defendant, George M. Shaheen, has damaged the plaintiff and is liable to the plaintiff for double damages pursuant to Conn. Gen. Stat. Section 52-565." The way in which Shaheen "has damaged the plaintiff" is not further specified. The second count incorporates the damages allegation of the first count—i.e., the claim of potential tax liability already described—by reference, and Criscuolo made it clear at argument that her damages claim is limited to that assertion. As mentioned, she conceded at argument that if the case were to be tried now, she could only receive nominal damages.

General Statutes § 52-565 provides that "[a]ny person who falsely makes, alters, forges or counterfeits any document, or knowingly utters, as true, any document falsely made, altered, forged or counterfeited, shall pay double damages to any party injured thereby." This is an ancient statute, dating from the code of laws established by the General Court of the colony of Connecticut in 1650. 1 Public Records of the Colony of Connecticut 526 (J. H. Trumbull ed., 1850). In spite of this impressive lineage, little jurisprudence on the statute exists. Although § 52-565 provides an independent statutory cause of action; *Aksomitas* v. *Aksomitas*, 205 Conn. 93, 102–103, 529 A.2d 1314 (1987); the elements of that

cause of action have never been set forth by a reviewing court.

The only reported case involving the statute that is even arguably analogous to this case is a case in the first volume of Day's Reports, and that case is so incompletely reported that it turns out to be no help at all. *Ross* v. *Bruce*, 1 Day (Conn.) 100 (1803), was an action on the statute commenced in 1800. The published report states that the plaintiff alleged "that the defendant, in September, 1799, had forged a certain note, payable to himself, in the name of Jonathan Sanger, in imitation of a genuine note, by which an estate, which the plaintiff had purchased, was incumbered; and that the defendant, knowing that the plaintiff had obligated himself to pay said genuine note, presented said forged note to him, and demanded payment thereof." Id. A verdict was ultimately found for the plaintiff, and the defendant appealed. The judgment was affirmed by the Supreme Court, but only the affirmance itself is reported. Id., 104.

*Ross* presents an important factual question that the published report fails to acknowledge. We are told that the defendant presented the forged note to the plaintiff "and demanded payment thereof." Id., 100. Was any payment actually made? This is a crucial question in the context of the present case. If payment was made, the plaintiff obviously had actual injury, and the affirmance of the plaintiff's verdict is unproblematic. If, however, payment was not made, the plaintiff in *Ross* becomes analogous to the plaintiff in *Freeman* or, for that matter, the plaintiff in the present case. If you present me with a forged note and demand payment but I refuse to pay, I have not been injured, just as I have not been injured if you try to sell me the Brooklyn Bridge and I decline your offer. Unhappily, this issue does not appear to have been raised in *Ross*, and the published report contains no answer to the factual question considered here. Under these circumstances, *Ross*

is too thin a reed on which to base the court's analysis in this case, and the analysis must instead focus on other considerations. Textual, functional, and doctrinal considerations must be reviewed.

The statutory text expressly requires injury to the plaintiff. Double damages are payable "to any party injured." General Statutes § 52-565. If the plaintiff has not been injured, it is difficult to see how the statutory cause of action can exist. This conclusion is reinforced by the obvious punitive function of the statute. Double damages are meant to sting. If the only damages awardable prior to doubling are nominal damages of one dollar, the double damages awardable under the statute will necessarily be two dollars. It is unlikely that an award of this modesty will have a punitive impact. There is an important doctrinal consideration as well. Forgery is "[t]he false making or the material altering of a document with the intent to defraud." Black's Law Dictionary 650 (6th Ed. 1990). It is thus appropriate to treat the forgery contemplated by the statute as a species of fraud. As previously discussed, the tort of fraud requires actual injury, and Criscuolo does not allege actual injury resulting from the fraud asserted here. Under these circumstances, there has been no concurrence of damage or injury with the asserted forgery, and the statutory cause of action has not been made out.

The third count of the complaint alleges a CUTPA violation. It specifically claims that Shaheen is in the business of purchasing and selling real estate, that his acts "are immoral, unethical, oppressive, and unscrupulous in violation of Conn. Gen. Stat. Section 42-110a et seq.," and that Criscuolo "has suffered an injury as a result of the defendant's conduct." As was the case in the second count, the claimed injury is not further described. Like the second count, the third count incorporates the damages allegation of the first count by reference, and it is evident that the alleged potential

tax liability is the injury to which the third count refers. Criscuolo confirmed this fact at the hearing and conceded that, if the case were to be tried today, she could receive nominal and, she hopes, punitive damages but no compensatory damages on her third count.

The question presented is not whether Criscuolo has alleged a CUTPA violation in the abstract but whether she has alleged sufficient facts to establish her standing to bring a private CUTPA action for damages. The answer to this question is determined by the CUTPA statute authorizing private actions for damages. General Statutes § 42-110g (a) provides in pertinent part that: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principle place of business or is doing business, to recover actual damages." Section 42-110g (a) contains two phrases that are of critical importance in the context of the case at hand. One is the requirement that a private CUTPA action be brought "to recover actual damages." The other is the requirement of "ascertainable loss." These requirements will be considered in turn.

"[A]ctual damages are synonymous with compensatory damages and with general damages." *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 427, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996). Such damages "are to be distinguished from damages which are nominal, exemplary or punitive." Black's Law Dictionary, supra, 35. Criscuolo's concession that, under the facts alleged in her complaint, she could only receive nominal and punitive damages if the case were to be tried today makes it clear that she cannot recover actual damages within the meaning of § 42-110g (a) on the basis of the facts alleged in her complaint.

Although Criscuolo's manifest inability "to recover actual damages" is itself fatal to the third count of her complaint, that inability is not the only fatal shortcoming of her CUTPA allegation. She additionally fails to allege "any ascertainable loss of money or property" resulting from the asserted violation. "The ascertainable loss requirement is a threshhold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 615, 440 A.2d 10 (1981). "An ascertainable loss is a 'deprivation, detriment [or] injury' that is 'capable of being discovered, observed or established.'" *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 638, 698 A.2d 258 (1997), quoting *Hinchliffe* v. *American Motors Corp.*, supra, 613. Under this definition, no ascertainable loss has been alleged here.

Criscuolo correctly points out that: "Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss." *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 614. This fact does not, however, negate the requirement that, for a CUTPA claim to be viable, at least *some* ascertainable loss must be alleged. *Hinchliffe* v. *American Motors Corp.*, supra, 613–14, relies on *Scott* v. *Western International Surplus Sales, Inc.*, 267 Or. 512, 517 P.2d 661 (1973), as relevant authority in this regard. The facts of *Scott* are instructive. The plaintiff in that case purchased a tent. The tent was in a sealed package with a card stating that it had a window with a closing flap and eaves. After the plaintiff purchased the tent and took it out of its package, he discovered that it did not have these features. The Supreme Court of Oregon held that, under these circumstances, the plaintiff had sufficiently established an ascertainable loss. Id., 515–16. It reasoned that: "The tent was purchased for $38.86. The inference is that the tent, as represented, had that value. The tent

sold did not have some of those represented features. The inference can be drawn that because the tent did not have a window with a closing flap or eaves it had a value of less than $38.86." Id.

The facts of *Scott* are quite different from the facts at hand. *Scott* involved a consumer who did not get what he paid for. The inference in that case that what the consumer actually received was worth less than what he paid was plainly reasonable. No inference of this sort can appropriately be made in the present case. Criscuolo alleges that she "may potentially suffer increased tax liabilities." No facts are alleged from which it may be safely inferred that such tax liabilities will in fact be incurred. Criscuolo relies on speculation rather than inference to establish her asserted loss, and it is the necessity of speculation that is fatal to her cause. She has alleged no "ascertainable loss," and her CUTPA claim must consequently fail.

The motion to strike is granted as to all three counts of the complaint.