[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE COMPLAINT
Defendants Travelers Property Casualty Corp. ("TPC"), Travelers Group, Inc. ("Travelers"), Travelers Equity Sales, Inc. ("Tower"), Salomon Smith Bamey Holdings, Inc. ("Smith Barney") and Travelers Life and Annuity Company ("TLAC") (collectively, "Defendants" or the "Travelers Defendants") have moved to strike the Amended Class Action Complaint (the "Complaint") filed by Plaintiffs pursuant to Connecticut Practice Book § 10-39(a). The gravamen of the Complaint, which is in twelve counts, is that the plaintiffs entered into structured settlements of lawsuits which they had brought against people or entities insured by TPC, the plaintiffs have received and expect to continue to receive all amounts due to them under the terms of those structured settlements, the plaintiffs have not moved to set aside the structured settlements, but nevertheless claim damages because TPC received a portion of a 4% commission on the annuities which funded the structured settlements and failed to disclose that to the plaintiffs. The plaintiffs or different plaintiff members of the same purported class have filed the same action in federal courts and in the Superior Court of the state of New Jersey. For the reasons set forth below this court agrees with the rulings of the aforementioned courts which have all found that the defendant's alleged actions did not damage the plaintiffs in any way and have dismissed those actions for failure to state a cognizable claim.
Facts
Plaintiffs Kathryn Huaman (as Custodian for Joshua Adickes) and Lisa Macomber each "entered into a structured settlement with Travelers Property Casualty Corp., which provided for an annuity owned by The Travelers Indemnity Company and issued by Travelers Life and Annuity Company." Complaint. ¶¶ 6-7. In each case, the annuities were purchased in connection with the settling of personal injury actions.Id. ¶¶ 21, 26. In each case the plaintiffs were represented by an CT Page 8174 attorney. Id. ¶¶ 22, 27.
Defendant TPC is a property-casualty insurance holding company organized under the laws of Delaware and headquartered in Connecticut.Id. ¶ 8. TPC, through various subsidiaries, provides commercial and personal property and casualty insurance products and services to businesses, government units, associations and individuals. Id. TPC has utilized structured settlements to settle personal injury, workers compensation, property, casualty and other claims asserted against its insureds. Some unspecified percentage of such structured settlements have been funded with annuities. Id. ¶ 12.
Plaintiffs allege that TPC entered into structured settlements on behalf of its insureds during the Class Period, as was common industry practice. Complaint. ¶ 12. Structured settlements have been used in the insurance industry since the 1970's to settle personal injury, workers compensation and other claims asserted against insureds. Such settlements, because they involve periodic payments over time, typically are funded with an annuity purchased by the settling insurance company from a life insurance company. Id. ¶ 13. The purchase of annuities usually involves payment of a standard commission — typically 4 percent — by the life insurance company selling the annuity to the broker who arranged for the purchase of the annuity. Id. ¶¶ 17-18.
Plaintiffs do not allege that this industry-wide practice of structured settlements, funded by annuities with payment of a standard commission to the arranging broker, is in any way fraudulent, manipulative or violative of insurance or other laws. Rather, plaintiffs first allege that TPC, "routimely and regularly" solicited and continues to solicit the sale of life insurance products without a license to do so. Complaint ¶ 14. Such allegation appears to be a legal conclusion wherein "solicit the sale" is synonymous with "purchase" because the Complaint further alleges that the plaintiffs' structured settlements entail TPC's purchase of annuities, not their sale, and neither of the named plaintiffs allege that they purchased an annuity from anyone. Id. ¶ 18.
Second, plaintiffs allege that after arranging a structured settlement, TPC would direct a broker to purchase an annuity to fund the settlement, and the broker would "rebate" a portion of the standard 4% commission paid by the life insurance company to TPC. Id. ¶¶ 34-35.
On March 20, 1990, Plaintiff Macomber entered into a structured settlement with defendant TPC with a present value and cost of $15,000, entitling her to annual payments of $1,015.18 for 30 years commencing on March 1, 1991. Complaint. ¶¶ 21-23. Plaintiff Macomber nowhere alleges that the value or cost of her settlement was less than $15,000, nor does CT Page 8175 she allege that TPC has failed to make any of the annual payments.
Plaintiff Huaman entered into a structured settlement with TPC with a present value and cost of $6,667, entitling her to periodic payments of $2,500 on January 21, 2005, $3,000 on January 21, 2006, $3,500 on January 21, 2007 and $5,000 on January 21, 2008. Id. ¶¶ 27. Plaintiff Huaman does not allege that she will not receive the annual payments to which she is entitled. Plaintiff Huaman also fails to allege the date upon which she entered into her structured settlement with TPC. Neither plaintiff alleges that they ever sought to, or now seek to, rescind the settlements.
Other Actions
The plaintiffs here, or members of their purported class, have filed actions which are essentially identical to this action in three prior federal actions. See Macomber v. Travelers Prop. Cas. Corp., No. 398-CV-01060 (D.Conn.); Huaman v. Travelers Prop. Gas. Corp., No. 398-CV-1093 (D.Conn.); Abdullah v. Travelers Prop. Cas. Corp., No. 399-CV-155 (D.Conn.). All three actions were filed on behalf of the same class as alleged here, based upon the same general allegations advanced here; and all three actions were dismissed as a matter of law because the plaintiffs could not allege any legally cognizable injury arising from the structured settlements of their personal injury claims In addition the attorneys for the plaintiffs in this action filed a similar action against Prudential Property and Casualty Company in New Jersey state court and that action was dismissed for the same reason. See Potts v.Prudential Prop. Gas. Co., No. HIUD-L-0135-99 (N.J.Super.Ct. Law Div.).
Plaintiffs Macomber and Huaman initially filed suit before Judge Eginton in the United States District Court for the District of Connecticut. See Macomber v. Travelers Prop. Cas. Corp., No. 398-CV-01060 (D.Conn.); Huaman v. Travelers Prop. Gas. Corp., No. 398-CV-1093 (D. Conn.). After consolidating the actions, Judge Eginton dismissed Plaintiffs' complaints, with leave to replead, for failure to allege how Plaintiffs had been deceived or injured in connection with the structured settlements of their personal injury claims. See Macomber v. Travelers Prop. Cas. Corp., 1999 WL 118005 (D.Conn. Jan 28, 1999). Plaintiffs chose not to amend their federal complaints and instead re-filed their claims in this court.
One day prior to Judge Eginton's dismissal of the federal Macomber and Huaman complaints, an almost identical complaint was filed in the District of Connecticut by yet another purported class action plaintiff. See Abdullah v. Travelers Prop. Gas. Corp., No. 399-CV-155 (D.Conn.). Judge Eginton dismissed the Abdullah action on November 5, 1999 because CT Page 8176 plaintiff could not allege any legally cognizable injury. See Abdullah v. Travelers Prop. Cas. Corp., No. 399-CV-155, slip op. (D.Conn. Nov. 5, 1999). In that decision Judge Eginton stated:
 Plaintiffs have not alleged a factual injury sufficient to sustain a RICO claim. They merely allege that "due to defendant's misrepresentations to plaintiffs and other members of the Class, plaintiffs and the Class were unaware that defendants did not, in fact, pay the full amount they had represented they would pay." The only economic loss that plaintiffs allege is an entitlement to the difference between the actual cost to TPC of purchasing the annuities through the agent broker dealer and the cost reflecting the rebates. Plaintiffs offer no theory of how this is "their property". 18 U.S.C. § 1964 (RICO requires an injury to the individual's business or property). Plaintiffs do not contend that their settlements suffered, that they were duped into accepting less than what they bargained for, or that the value of the annuity was something other than represented.
 The events in this case are unambiguous, the New York courts approved structured settlements between defendant TPC and each plaintiff. Each settlement was for a sum certain and consisted of a lump sum payment and an annuity. The payment stream and the value of the annuity were specific in the agreement. There is no dispute that plaintiffs will receive the amount of money and payment stream for which they bargained in the settlement agreements, or that the value of the payment stream is anything less than bargained for. Any costs or rebates that TPC incurred in obtaining the amount of money bargained for in the settlement is immaterial as to the value of the settlement, and in no way injured the plaintiffs.
 In United States v. Starr, 816 F.2d 94 (2d Cir. 1987), the defendants were operators of a bulk mailing service that concealed higher-rate packages among the lower rate packages thereby defrauding the United States Postal Service. Although it was the United States Postal Service that was defrauded, the indictment charged defendants with using the mail to defraud its customers. The Second Circuit reversed the indictment on the grounds that "the customers had CT Page 8177 received the same service they would have received had the defendants paid the proper postage." Id. at 98. The same result applies in this case. Despite any alleged misrepresentation, plaintiffs will receive the same settlement amounts and value of the settlements they would have received if TPC did not accept any rebates.
Pp. 5-6.
In Potts v. Prudential Prop. and Cas. Co., No. HUD-L-0135-99 (N.J.Super.Ct. Law Div.), counsel for Plaintiffs in this action brought claims identical to those asserted here in New Jersey state court against Prudential Property and Causalty Company. The New Jersey Superior Court dismissed the action on the grounds that plaintiffs had ""not sustained any damages."
In Potts Judge Gallipolli of the New Jersey Superior Court considered the case in which the Potts family made a claim against the tortfeasor's insurance company, State Farm, for $100,000 and then made a claim against their own uninsured motorist carrier, Prudential Property and Casualty Company of New Jersey (referred to as "Prupac"). The Potts family had a total of $300,000 uninsured motorist coverage with Prupac. After receiving a credit for the $100,000 paid by State Farm, the Potts family had $200,000 in coverage remaining. Prupac paid them the entire $200,000 by paying $5,000 in cash and funding a structured settlement with the remaining $195,000. Judge Gallipolli did not issue a written decision, but instead ruled from the bench after a colloquy with counsel for the plaintiffs, Mr. Stone. Mr. Stone conceded that Prupac initially paid the full $195,00 to Canada Assurance, the company which provided the annuity, but argued that the full $195,000 amount had not really been paid because Prupac received a portion of the commission from Creative Capital, the broker who secured the annuity. This argument was the gravamen of the plaintiffs' case in Potts and here. Judge Gallipolli's view of that argument was set forth in the transcript of the argument and is set forth in part as follows:
The Court: Do the plaintiffs get and continue to get what they agreed to take in exchange for the release?
Mr. Stone: Yes.
The Court: How have they been harmed?
Mr. Stone: They've been harmed in at least two ways. CT Page 8178
The Court: How?
Mr. Stone: First, they've been lied to by — in their —
The Court: No. How have they been monetarily harmed? How have they gotten less than they agreed to take? They agreed to take $195,000, which would be placed in a structure for them and that structure would buy X number of dollars worth of benefits. Are they getting the benefits they agreed to take?
See Transcript of June 11, 1999 Hearing ("Potts Tr.") at 28-29
When Mr. Stone responded that a portion of the commission (legally) charged for the annuity had gone to Prupac the following colloquy took place:
The Court: What difference does it make? What difference does it make with regard to the plaintiffs? How have they gotten less? How have they gotten less than they contracted to get?
Mr. Stone: The plaintiffs have been effectively misled.
The Court: No. I asked a specific question. How have they gotten less than they agreed to take? And if they were misled, just to follow up on that, and the misleading came to light presumably a month after, why wasn't there an application to set aside the settlement and basically say, we have been defrauded here? Why wasn't that application made to the Court when it became known?
Mr. Stone: I don't know the answer to that, Your Honor.
See Transcript of June 11, 1999 Hearing ("Potts Tr.") at 28-29
After extended colloquy with counsel Judge Gallipolli dismissed the case on the grounds that the plaintiffs received exactly what they had bargained for in the structured settlement with Prupac: an annuity with a present value of $195,000. Therefore, plaintiffs had not been damaged in any way. See Transcript of June 11, 1999 Hearing ("Potts Tr.") at 28-29.
Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989);Mingachos v. CBS, Inc., 196 Conn. 91, 108, CT Page 8179491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987). The court should view the facts in abroad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz, 12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg,200 Conn. 367, 370, 511 A.2d 336 (1986).
An essential element of each of Plaintiffs' claims is a legally cognizable injury. See, e.g., Kilduff v. Adams, Inc., 219 Conn. 314,329-330 (1991) ("A plaintiff who has not suffered damage or injury cannot pursue an action at law or in equity for nominal damages resulting from fraudulent actions. It is clear that proof of damages is an essential element of a fraud action") (citation and footnote omitted); Criscuolov. Shaheen, 46 Conn. Sup. 53, 57 (Super.Ct. 1999) ("[n]ominal damages are not awarded in deceit, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been") (citing W. Page Keeton William W. Prosser, Prosser Keetonon the Law of Torts, § 110, p. 765 (5th ed. 1984); Rizzo Pool Co. v.Del Grosso, 232 Conn. 666, 683 (1995)); 225 Assocs. v. Connecticut Hous.Fin. Auth., 1998 WL 376022, at *5 (Conn.Super.Ct. June 23, 1998) ("the plaintiff has failed to prove a claim for breach of contract because it has not shown the fourth element of the cause of action: damages"); Abrahams v. Young and Rubicam, Inc., 240 Conn. 300, 306 (1997) ("in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that, "as a result of this act, the plaintiff suffered an injury").
Just as in the prior federal actions and in Potts, the present action is premised on generalized allegations that, in entering into structured settlements of personal injury claims brought against its insureds, defendant TPC failed to disclose to personal injury plaintiffs its true "cost" in funding those settlements. See Complaint. ¶¶ 3, 30. Plaintiffs allege that, in connection with their settlements, a representation was made as to the "cost" to TPC of purchasing an annuity that would fund the structured settlement payments. See id. ¶¶ 3, 20-29. Plaintiffs assert that the purported "cost" to TPC was actually slightly less than represented because of an allegedly unlawful "rebate" received by TPC, which "rebate" allegedly consisted of a portion of the standard 4% commission paid to the broker who had arranged for the purchase of the annuity from a life insurance company. See id. ¶¶ 34-35. The CT Page 8180 plaintiffs acknowledge that the "illegal rebate" was part of a commission that was I legally charged. The plaintiffs' theory, also espoused in all of the prior actions, is that TPC's alleged reduced "cost" in purchasing this annuity somehow translates into additional value that plaintiffs should have received in their settlements. See id. ¶¶ 2, 5.
The major flaw in the plaintiffs' theory is that no principle of law requires one party to an arm's length settlement negotiation to disclose to the other party the "cost" of funding the settlement, much less any party's view of the value of that settlement. This is particularly true where, as here, each side to the settlement negotiations is represented by counsel and can determine for themselves the value of the settlement, consisting of up-front and future payments in predetermined amounts. Seeid. ¶¶ 22-23, 26-27.
Here, the plaintiffs theorize that the "costs" to TPC of funding structured settlements were misrepresented because TPC supposedly received an unlawful "rebate" of a portion of the standard 4% commission that was paid to the broker that arranged for TPC's purchase of an annuity from Travelers Life and Annuity Company ("TLAC") fund the settlements. Id. ¶¶ 4, 34-35. The plaintiffs argue that they (and the rest of the class) are entitled to recover the purported "rebate," yet they never allege how or why they are entitled to any portion of the standard annuity commission paid to the broker by TLAC for arranging the sale of the annuity to TPC.
In Abdullah, Judge Eginton was faced with claims arising from the exact same "rebating scheme" as alleged here. Recognizing that "[t]he rebates had no effect on the value of the annuities or the initial lump sum payment" and that "there was no impairment of the value of the bargained for settlements," Judge Eginton held:
 The plaintiffs' . . claim must fail because they have not demonstrated an injury. They do not allege how the alleged misrepresentations entitle them to the difference between the actual cost and the rebate cost, or how they received anything less than what they were promised, or how the failure to disclose the rebates or costs of the annuities in anyway affected their settlements.
 Abdullah Op. at 6-7 (emphasis added).
The plaintiffs in Potts alleged the same state law claims advanced here. The Potts court held that since Prudential paid $195,000 for its purchase of the annuity as it had agreed to do, the fact that the annuity CT Page 8181 provider paid the broker a standard 4% commission (a portion of which the broker later paid to Prudential), had absolutely no impact whatsoever on the plaintiffs' settlement. See Potts Tr. at 22-25, 27-28.
Just as in Abdullah and Potts, the plaintiffs here have not alleged that they received less than what they bargained for. It is undisputed that the Travelers defendants purchased an annuity which, together with the usual 4% commission, cost the amount that TPC is alleged to have said it would cost, and provided funding for the stream of payments TPC promised to make to the plaintiffs as part of their personal injury settlements. The plaintiffs admit that the 4% commission was never a part of the payments promised to the plaintiffs.
Each of the counts of the Complaint must fail because, regardless of how the plaintiffs choose to characterize the defendant's conduct, they have not asserted that they suffered any damage because they have received the exact amounts which they agreed to and expected to receive under the structured settlement agreements. As set forth above (pp 8-9) the suffering of some damage by the plaintiffs is a necessary element of all causes of action alleged in the Complaint.
For the foregoing reasons, the Motion to Strike is granted.
By the court,
Aurigemma J.