[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE COUNTERCLAIM (#127)
This action was commenced by way of an application for a temporary injunction and a verified complaint, dated December 11, 2000, filed on December 19, 2000. On January 25, 2001, the plaintiff, Future Industries of America, Inc., ("Future") withdrew its application for a temporary injunction and also withdrew the first, second, fourth and sixth counts of its complaint. An amended complaint, in two counts, was filed on March 12, 2001. The defendants Denise Gallagher-Farren ("Farren") and SonnenBraune, Inc. ("SonnenBraune") filed an amended answer and a counterclaim on August 21, 2002. Future then moved to strike the counterclaim in its entirety, and some of the prayers for relief, claiming that the counterclaim failed to properly allege actionable harm and that each of its counts was legally insufficient.
"[A] motion to strike challenges the legal sufficiency of a pleading . . ." (Internal quotation marks omitted.) Doe v. Yale University,252 Conn. 641, 667, 748 A.2d 834 (2000); see also Practice Book §10-39. The court must construe the facts alleged in the counterclaim, as well as any facts necessarily implied by the allegations, in the light most favorable to the pleader. Noble v. Marshall, 23 Conn. App. 227,229, 579 A.2d 594 (1990).
The counterclaim alleges the following facts that are common to all counts: Future is a Connecticut corporation in the business of distributing tanning beds and other products. By way of a complaint dated December 11, 2000, it sued Farren, its former employee, and her new employer, SonnenBraune. SonnenBraune, a Georgia corporation authorized to do business in Connecticut, is a manufacturer of tanning beds. Farren left Future to take a position as the general manager of SonnenBraune's northeastern United States' distributorship. (First Count, ¶ 1.) Future brought tort and contract claims against the defendants in its original complaint. (Id., ¶ 2.) The application for a temporary CT Page 3802 injunction was based, in part, on an alleged employment agreement dated September 7, 1997 ("agreement"). (Id. ¶ 3.) This agreement was marked as an exhibit at the hearing held on the application for a temporary injunction on January 16, 17 and 22, 2001 before Judge Nadeau. (Id., ¶¶ 4, 5.) On January 22, 2001, during the hearing, the defendants presented evidence that Farren's signature on the agreement was forged. (Id., ¶ 6.) The defendants also submitted a disclosure of a handwriting analysis expert. (Id., ¶ 7.) Thereafter, Future withdrew its application for a temporary injunction, which was the first count of its original complaint, as well as the second, fourth, and sixth counts on January 25, 2001. (Id., ¶ 8.) In its revised and amended complaint, Future abandoned any claims relating to the agreement and deleted allegations that the defendants had taken away customers from it. (Id., ¶ 10.) Facts specific to each count will be addressed in connection with that count.
 I. Actionable Harm
Future maintains that the defendants could not have sustained any damages as a result of the conduct alleged above because the claims Future made against the defendants, based on the agreement, were pending for only a short time and were withdrawn without any court order. In their counterclaim, the defendants allege that Future's anti-competitive conduct resulted in the diminishment or restriction of their economic business opportunities and/or interests; damage to their reputation in the business community and substantial legal fees and costs to them. These allegations are significantly different from those in Criscuolo v.Shahee, 46 Conn. Sup. 53, 54, 736 A.2d . 947, 24 Conn.L.Rptr. 307
(1999), the one case upon which Future relies. There, the damages' allegation was that "the plaintiff may potentially suffer increased tax liabilities." (Emphasis supplied.) As the court stated, "[t]his language is inescapably speculative. A judge or jury considering the facts set forth in the complaint would not be permitted to award actual damages."Id., 54-55. Furthermore, Criscuolo essentially conceded the point. Here, the defendants have alleged that they sustained actual damages and, if the counts of the counterclaim are otherwise legally sufficient, should have an opportunity to prove the nature and extent of those damages. SeeKimball v. Hall, 87 Conn. 563, 89 A. 166 (1913).
 II. First Count (Forgery)
Future claims that the counterclaim's first count fails to state a claim for statutory fraud because it does not refer to the specific statutory violation as required by § 10-3 (a) of the Practice Book. Future agrees, however, that the controlling statute, General Statutes CT Page 3803 § 52-565, is cited in the claim for relief. This suffices to put Future on notice of the nature of the statutory violation. Practice Book § 10-3(a) is directory, not mandatory. See, e.g., Criscuolo v. MauroMotors, Inc., 58 Conn. App. 537, 545, 754 A.2d 810 (2000). Accordingly, Future's claim has no merit.
 III. Second Count (Fraud)
Future claims the defendants have failed to allege sufficient facts which demonstrate the essential elements of fraud. In addition to the general factual allegations recited above, the pertinent factual allegations of the second count are as follows: Future knowingly caused allegations relating to the agreement, which it knew was falsely made, altered and/or forged, to be set forth in its verified complaint and application for a temporary injunction. (Second Count, ¶¶ 12, 13.) In addition, Future's president testified about the agreement during the injunction hearing and Future permitted the agreement's admission into evidence. (Id., ¶¶ 14, 15.) It is further alleged that Future took these steps in order to prevail on its complaint and at the injunction hearing. (Id., ¶¶ 12, 13, 14, 15.)
Both sides agree that the essential elements of common law fraud are as follows: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." BarbaraWeisman, Trustee v. Kaspar, 233 Conn. 531, 539, 661 A.2d 530 (1995). Future correctly maintains that the allegations are insufficient to satisfy the third and fourth elements.
The defendants argue that an inference can be drawn from their allegations that Future intended to induce the defendants to cease their business relationship by using a forged document in a court proceeding. But the false representation was not made directly to Farren or SonnenBraune, it was made to the court. Moreover, there is no allegation that Farren or SonnenBraune acted in reliance on the false representation. Although the defendants claimed they incurred legal fees and expenses to defend the action, they were acting in defense and not in reliance.
Essentially, the defendants have alleged that Future made false representations to the court, by way of its pleadings and evidence, in order to prevail, that is, to induce the court to decide in its favor. The Supreme Court recently decided an analogous case. SuffieldDevelopment Associates Limited Partnership v. National Loan Investors,
CT Page 3804260 Conn. 766, 802 A.2d 44 (2002). In Suffield, the plaintiff's complaint alleged that the defendants had made false representations to the court in a separate proceeding in order to obtain an execution that the plaintiff claimed was in excess of an amount due under a stipulated judgment between the parties in a prior proceeding. The plaintiff conceded that these allegations were insufficient to support a claim for either common law fraud or fraud on the court, but instead asked the court to "recognize a new fraud tort based on the circumstances of this case." Id., 260 Conn. 777. The court declined, noting the plaintiff's failure to "offer even a single legal principle or public policy argument supporting its creation." Id., 260 Conn. 780. Furthermore, the court concluded that allegations that a party made a fraudulent misrepresentation to induce the trial court, not the opposite party, to act to the opposite party's detriment, do not suffice to state a claim for common law fraud. This conclusion applies here. Accordingly, the second count must be stricken.
 IV. Third and Fourth Counts (Vexatious Litigation)
Future argues that the third and fourth counts of the counterclaim, alleging common law and statutory vexatious litigation respectively, must be stricken because the allegations do not satisfy the requirement that prior litigation has terminated in favor of the party claiming vexatious litigation. Future maintains that this means that a defendant cannot counterclaim for vexatious litigation in the original proceeding. The defendants have countered that because Future withdrew four counts of the complaint without compromise, the requirement that the prior litigation be terminated has been sufficiently pled.
The parties agree that Connecticut law adheres to the well-established rule that a claim of vexatious litigation requires a successful or favorable termination of the prior litigation. See QSP, Inc. v. AetnaCasualty Surety Co., 256 Conn. 343, 361, 773 A.2d 906 (2001);Zeller v. Consolini, 235 Conn. 417, 424, 667 A.2d 64 (1995). This essential element of the tort of vexatious litigation is composed of two components: a terminated proceeding, Schaefer v. O.K. Tool Co.,110 Conn. 528, 532-33, 148 A. 330 (1930), and an outcome that favors the vexatious litigation plaintiff. DeLaurentis v. New Haven, 220 Conn. 225,250-51, 597 A.2d 807 (1991).[1] The termination "requirement serves to discourage unfounded litigation without impairing the presentation of honest but uncertain causes of action to the courts. The requirement furthermore serves the interest of finality of judicial decisions, by preventing a person who was unsuccessful in the original proceeding from relitigating the same issues in a subsequent action for vexatious litigation." (Internal citations omitted.) Blake v. Levy, 191 Conn. 257, CT Page 3805 263-64, 464 A.2d 52 (1983).
The issue here is whether the plaintiff's partial withdrawal of certain counts in an ongoing matter satisfies the termination requirement. Although it has been stated that termination of the underlying proceeding does not require either an "adjudication on the merits" or "that the circumstances of the termination" indicate nonliability, if "the proceeding has terminated without consideration," DeLaurentis v. NewHaven, supra, 220 Conn. 251, there is no appellate authority for the proposition that a partial withdrawal satisfies the requirement that the underlying proceeding has terminated.
The defendants rely on a number of Superior Court cases, but none has addressed this issue directly. In Spear v. Summit Medical Center, Inc.,
Superior Court, judicial district of Hartford, Docket No. 525939 (April 16, 1998, Sheldon, J.), all of the claims against the vexatious litigation plaintiff were voluntarily and unconditionally withdrawn in a prior action. The case of Mozzochi v. Rogers, Superior Court, judicial district of Hartford, Docket No. 527773 (Sept. 25, 1995, Corradino, J.) (15 Conn.L.Rptr. 260), concerned an action for vexatious litigation based on motions for penalty filed within and as part of certain appeals pending before the Freedom of Information Commission. In dicta, Judge Corradino refers to comment F, Restatement (Second) Torts, § 674, for the proposition that an "an action for vexatious suit can be filed for a so-called `ancillary proceeding,'" and cites a New York case, LincolnFirst Bank v. Siegel, 60 App.Div.2d 270, 400 N.Y.S.2d 627 (App.Div. 1977), specifically for the proposition that "there might be liability for . . . securing an injunction incident to the proceedings on a civil action." Lincoln First Bank is of no help to the defendants in this case. It predicates a vexatious litigation suit based on the procurement of a provisional remedy such as an injunction on a real or actual interference with person or property.[2] Id., 60 App.Div.2d 280-81. Future's withdrawal of its application for a temporary injunction caused no injury to the defendants in this case. In a similar vein it has been held that denial of a prejudgment remedy does not provide a basis for a vexatious litigation claim. See Savitt v. Condon Olderman Realty, Superior Court, judicial district of Ansonia/Milford, Docket No. 073254 (Oct. 31, 2002, Holden, J.) (33 Conn.L.Rptr. 325); Wisnioski v. Ladizki,
Superior Court, judicial district of Hartford, Docket No. 597336 (Oct. 4, 2001, Peck, J.) (30 Conn.L.Rptr. 474).
Additionally, the defendants cite to a line of cases exemplified bySonitrol Security Systems of Hartford, Inc. v. Department ofAdministrative Services, Superior Court, judicial district of Hartford, Docket No. 702181 (Nov. 10, 1992, Schaller, J.), in which the court, CT Page 3806 relying on a number of cases that have now been discredited,[3] denied a motion to strike counterclaims based on vexatious litigation on the ground of "judicial economy and avoidance of multiple lawsuits." More recent decisions of the Superior Court, however, have reflected the underlying policy concerns expressed in Blake v. Levy, supra,191 Conn. 263-64, in their rejection of counterclaim counts sounding in vexatious litigation. See, e.g., Classic Limousine v. AllianceLimousine, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 174911 (Aug. 13, 2002, D'Andrea, J.T.R.) and cases cited therein; Bodek v. Productivity, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 339298 (July 2, 1998, Melville, J.) (22 Conn.L.Rptr. 333), and cases cited therein.
This court concurs that, as a matter of policy, it is unwise to permit a party to assert a counterclaim for vexatious litigation. As theDeLaurentis court noted, there is a "danger of inconsistent judgments if defendants use a vexatious suit . . . as a counterattack to an ongoing proceeding." DeLaurentis v. New Haven, supra, 220 Conn. 251. And if consideration of the counterclaim is deferred until the main suit is terminated, as the Sonitrol court suggested, little will be achieved by way of judicial economy. Finally, permitting a counterclaim for vexatious litigation to be brought whenever a plaintiff voluntarily withdraws one or more counts in a complaint during the pendency of the litigation could create the very chill to "the presentation of honest but uncertain causes of action to the courts," Blake v. Levy, supra, 191 Conn. 263, that the termination requirement seeks to avoid. Accordingly, the defendant's motion to strike the third and fourth counts of the counterclaim is granted.
 V. Fifth Count (Interference with Business Expectancy)
Future claims that in order to hold it directly responsible for this tort, the counterclaim must allege that its agents, acting on behalf of the corporation, authorized or ratified the actions which would constitute the tort of interference with contractual relations. It relies solely on Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 504-06,656 A.2d 1009 (1995). The defendants reply that Larsen did not hold that these allegations are required, although the defendants concede thatLarsen requires proof that an agent of the corporation authorized or ratified the tortious conduct. Moreover, the defendants argue that the fifth count contains the allegations that Future maintains are necessary. The defendants are correct.
In Larsen, the complaint alleged that a company "independent of any vicarious liability, had itself committed the business related torts of CT Page 3807 interference with contractual relations and unfair competition." Id.,232 Conn. 504. The court was not asked to review the adequacy of the allegation, but only the adequacy of the proof. There is no question in this case that to prevail against Future on this count of the counterclaim, the defendants will have to demonstrate that "agents of the corporation, acting on behalf of the corporation, must have authorized or ratified the wrongful acts." Id., 232 Conn. 505. The mere fact that the fifth count does not contain this precise language does not require it to be stricken. In addition, it can be fairly implied from the facts alleged that Future's president, by prosecuting an action against the defendants, signing the verified complaint and testifying during the hearing on the application of the temporary injunction, (Fifth Count, ¶¶ 2, 3, 12, 13, 14) was acting on behalf of the corporation and had authorized the acts claimed to be tortious. Accordingly, the motion to strike the fifth count is denied.
 VI. Sixth Count (CUTPA)
The sixth count of the counterclaim, which seeks to allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq., incorporates the allegations of the first through fifth counts and then alleges that Future's actions "constitute deceitful, reckless and wanton misconduct and are a violation" of CUTPA. (Sixth Count, ¶ 23.) Future maintains that this count should be stricken on several grounds. First, it claims that a CUTPA claim against an employer cannot be based on a theory of respondeat superior. Second, it claims that the defendants fail to allege that the wrongful acts Future engaged in occurred in the conduct of trade or commerce. Finally, Future claims that punitive damages cannot be awarded against it when liability is based solely on respondeat superior. The defendants have responded that the CUTPA count alleges both direct and vicarious liability and is sufficient to satisfy the "trade or commerce" requirement of the statute.
As discussed above, the fifth count makes claims directly against Future. Since the CUTPA count incorporates those allegations, neither it nor the punitive damages claim can be stricken based on Future's vicarious liability argument. Furthermore, in viewing the allegations of the sixth count in the light most favorable to the pleader, they are sufficient to satisfy the "trade or commerce" requirement.
"CUTPA, by its own terms, applies to a broad spectrum of commercial activity." Larsen Chelsey Realty Co. v. Larsen, supra, 232 Conn. 492. It is well established that competitors may maintain a CUTPA action. "Although purely intracorporate conflicts do not constitute CUTPA CT Page 3808 violations, actions outside the scope of the employment relationship designed to usurp the business and clientele of one corporation in favor of another . . . fit squarely within the provenance of CUTPA. (Internal quotation marks omitted; internal citation omitted.)" Ostrowski v.Avery, 243 Conn. 355, 379, 703 A.2d 117 (1997). See Fink v. Golenbock,238 Conn. 183, 212-13, 680 A.2d 1243 (1996). In analyzing the allegations to determine whether Future, its agents, or employees engaged in trade or commerce the court must consider the actions alleged as a basis for the CUTPA violation, rather than Future's relationship with the defendants.Larsen Chelsey Realty, supra, 232 Conn. 492.
Section 42-110b (a) broadly defines "trade or commerce" to include, among other things, "the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110b
(a) (4). The counterclaim alleges that Future engages in the distribution of tanning beds and other products in Connecticut and SonnenBraune, a manufacturer of tanning beds, has a distributorship for tanning beds covering the northeastern United States for which it engaged Farren to be the general manager. (First Count, ¶ ___). The counterclaim further alleges the "Future commenced and prosecuted the temporary injunction when it knew or should have known that such an action would interfere with Farren's employment duties with SonnenBraune, would interfere with SonnenBraune's ability to utilize Farren in all her designated territories, would substantially reduce Farren's sales territory, and thereby reduce Farren's ability to earn a living and reduce SonnenBraune's ability to make sales through Farren." These allegations sufficiently state a claim for anti-competitive practices arising out the distribution of an article or thing of value in this state for the purposes of the CUTPA count.
 VII. Prayer for Relief
Future has moved to strike paragraphs three, four and five of the defendants' prayer for relief. Paragraph five pertains to the CUTPA count and has been addressed above. Paragraph four pertains to the vexatious litigation counts which the court has previously stricken and it must be stricken as well. Paragraph three pertains to the forgery count. Future argues that the defendants cannot recover double damages under the provisions of General Statutes § 52-565 on a theory of respondeat superior and it relies on Aksomitas v. Aksomitas, 205 Conn. 93, 103,529 A.2d 1314 (1987). Aksomitas merely stands for the proposition that "the jury, in rendering a general verdict for the plaintiff, did not clearly determine liability under § 52-565 which would have required double damages." Whether the defendants present sufficient evidence to CT Page 3809 qualify for statutory damages must await a trial on the merits.
VIII. Conclusion[4]
For the reasons stated above, the motion to strike the first, fifth and sixth counts of the counterclaim and paragraphs three and five of the prayer for relief is denied. The motion to strike the second, third and fourth count of the counterclaim and paragraph four of the prayer for relief is granted.
LINDA K. LAGER, JUDGE